JOHN EPPLE CONSTRUCTION COMPANY and J.S. Alberici Construction Company, Inc., Respondents,

v.

LABOR AND INDUSTRIAL RELATIONS COMMISSION, DIVISION OF EMPLOYMENT SECURITY and Donald K. Welty, et al., Appellants.

No. WD 33591.

Missouri Court of Appeals, Western District.

Feb. 22, 1983.

Catherine J. Barrie, Jefferson City, for appellants.

H.C. Willbrand, Columbia, for respondents.

Before KENNEDY, P.J., and WASSERSTROM and LOWENSTEIN, JJ.

KENNEDY, Presiding Judge.

Unemployment compensation claimants appeal from a judgment of the circuit court

which reversed a decision of the Labor and Industrial Relations Commission, finding that they were not ineligible for unemployment benefits. The Commission (in denying employers' application for review) had adopted a decision of the Appeals Tribunal referee which in turn reversed a decision of the deputy which had found claimants ineligible for benefits.

We reverse the judgment of the circuit court and reinstate the decision of the Commission, but remand the case to the Commission for further proceedings as hereinafter directed.

The claimants—two brickmasons and three carpenters—were employees of John Epple Construction Company and J.S. Alberici Construction Company, Inc., general contractors of a construction project known as Boone County Hospital project. On the two days in question, May 2 and May 12, 1980, the operating engineers employed by Epple and Alberici were on strike. The strike commenced on May 2, 1980, and continued till July 5.

## I

The employers' contention is that the claimants were ineligible for benefits under § 288.040.5, RSMo 1978, because they were participating in the labor dispute which resulted in a stoppage of work. This position was adopted by the deputy who disallowed the claims.

The claimants, on the other hand, say that they were "not participating in . . . the labor dispute which caused the stoppage of work" and they were therefore not ineligible under § 288.040.5, RSMo 1978. They say that the reason they did not work on the days in question was that there was no work for them to do. The critical finding of the Commission, the finding which the employers attack and the claimants defend, is this: "there was little or no work available for or offered to the claimants by the employer at the site on or after May 2, 1980 or May 12, 1980."

Our task on this appeal, as it was the task of the circuit court, is to determine if the Commission's findings as to facts are "supported by competent and substantial evidence." If so supported they are conclusive upon the circuit court and upon us. § 288.-210, RSMo 1978; *Doerer v. Labor and Industrial Relations Commission,* 617 S.W.2d 501, 503 (Mo.App.1981); *Cullors v. Missouri Division of Employment Security,* 564 S.W.2d 596, 598 (Mo.App.1978).

The facts are as follows:

Claimant James Kyger was a masonry foreman. On May 2 when he reported for work at the Boone County Hospital project, some of his men had not reported. At 9 o'clock a.m. that day he told all his brickmasons, "it was very obvious [he] wasn't going to have any laborers." On May 12 he reported for work about 7:15 o'clock a.m. He worked a short while securing, locking up and putting away equipment. All the brickmasons were on the site. Kyger explained:

I would like to say that a mason is very limited on what his duties are, what he can perform without the mason tenders to work with him . . . . [W]ith Epple Construction Company the hod carriers and the brick masons work so close together—each craft lets the other craft kinda overlap, and we perform each others duties at times . . . . So this morning, the morning you're speaking of, the mason tenders did not show up. It was very obvious they weren't there, because the mixer and they hadn't prepared the job to start to work at eight o'clock, where the mason tenders starts at 7:30, and it's—was very obvious there wasn't gonna be any mason work did [sic] on the project.

Claimant Welty, a brickmason, reported at the work site at about 7:15 a.m. on May 2 and also on May 12. There were no laborers on the job to prepare mortar. He did not work because the masons "didn't have any material to work with that day."

Claimant Coleman's testimony, although somewhat vague, indicated that he was at

the job site on May 2 and May 12 and that there appeared to be no work available. On one of those mornings, employers' superintendent, Ray McKinsey, told him there would be no work. On May 12, the employers' gate was locked. He testified that he went back two, three or four mornings after that and the gate was closed each morning. He said the pickets were on the job and he didn't "see any representatives from Epple."

Claimant Walters also reported for work on May 2. He went to the office trailer by the employers' gates. Shortly after 8 o'clock a.m. Superintendent Ray McKinsey brought out all the employees' checks. Walters understood no one was going to be working on that day. When he reported for work on May 12, 1980, the employers' gates and office were locked, although there was usually someone on the job to open employers' office by 7:30, and there was always supervision on the job before 8 o'clock a.m. Walters left the premises shortly before 8 o'clock a.m.

Claimant Jackson went to the work site on May 2, 1980. He picked up his check. Superintendent Ray McKinsey told him and other employees that there would be no work for a while due to the strike. Jackson, too, reported there for work on May 12, before 8 o'clock. The employers' gate was locked.

On this testimony, the Commission found:

> Therefore, I find that there was no work available for the claimants from May 2, 1980, until the strike was settled in the early part of July 1980. It is further found that inasmuch as there was no work available for the claimants, the claimants did not participate in the strike by reason of the refusal of any claimant or other member of the union to which they belong to cross the picket line of the operating engineers after May 2, 1980. It is therefore found that the claimants were not ineligible for benefits under the above provisions of Section 288.040.5. . . .

The factual issue boils down to whether there was work available at the site for the claimants on May 2 and May 12, 1980, as the employers contend, or whether, as the claimants argue, there was no work available.

The employers point to evidence tending to show that there was work available on the days in question both for the bricklayers and for the carpenters. They point to claimant Welty's testimony that the assistance of a laborer is not needed for cutting brick into special shapes or for washing down brick. But his testimony indicated, too, that they had ceased cutting bricks because they thought they had enough cut. As to washing down brick, a laborer would have to build a scaffold since washing was done from the top down.

Employers also urge us to accept the testimony of project manager Ross Kidwell, whose testimony was that there was work available for any carpenter or bricklayer who wanted to cross the picket line. However, the weight and credibility of the witnesses were for the Commission. *Fruehauf Division, Fruehauf Corp. v. Armstrong,* 620 S.W.2d 67, 68 (Mo.App.1981); *Downs v. Durbin Corp.,* 416 S.W.2d 242, 243 (Mo.App. 1967). It is clear, with respect to each claimant, that the Commission's finding that no work was available for them on the days in question was supported by competent and substantial evidence. The circuit court's finding and judgment reversing the decision of the Commission must itself be reversed.

## II

In order to be eligible for unemployment benefits, however, each claimant must show also that he is "available for work; provided, however, that no person shall be deemed available for work unless he has been and is actively and earnestly seeking work." § 288.040.1(2), RSMo 1978.

The circuit court found and adjudged that none of the claimants was "available

for work" within the meaning of the statute during the period for which they were claiming unemployment benefits, and held, on that additional and independent ground, that they were ineligible for unemployment benefits.

The Commission had not made a finding on this point. The Commission had found only that the claimants were not ineligible by reason of the labor dispute/availability of work issue, § 288.040.5, RSMo 1978, and had decided that the claimants were not ineligible on that ground. In the case of Coleman, Jackson and Walters, the referee expressly noted: "Since the employer did not raise the issue of the claimants' work search in its protest, it cannot raise the issue at the hearing." In all the cases, however, he expressly limited his decision to the issue of the ineligibility of the claimants by reason of the labor dispute/availability of work issue.

■ Claimants say that the circuit court was in error in holding on appeal that they were ineligible because they were not available for work.

The appealing claimants must be sustained upon this point on the authority of *Chemtech Industries, Inc. v. Labor and Industrial Relations Commission*, 617 S.W.2d 121 (Mo.App.1981). The case is on all fours with the one before us. In that case the appeals referee (and the Commission, by denying the employer's application for review) specifically rejected the issue of the claimant's availability for work and made no finding thereon. Having made no such finding, it could not be reviewed by the circuit court. Wrote Judge Stewart: "The circuit court does not try the case *de novo* and is restricted to a review of the issues determined by the Commission." 617 S.W.2d at 125 (emphasis supplied).

In the case before us, the circuit court undertook to try *de novo* on the record before it, the question of the claimants' availability for work. In so doing the court was in error.

The availability-for-work issue has never been decided by a competent tribunal. The deputy at the initial level did not decide it, because he found claimants ineligible on account of their participation in a labor dispute. The Appeals Tribunal, the referee, did not undertake to decide the issue.

■ The availability-for-work issue must be decided initially by the deputy, so *Chemtech* teaches us, §§ 288.040.1, RSMo 1978, and 288.070.2, RSMo (Supp.1982), and the case must be remanded to that level. Furthermore the issue must be decided whether it is included in the employer's protest or not. Claimant's availability for work is not presumed from the absence of protest by the employer. The claimant has the burden of proof to show it. *Weber v. Labor and Industrial Relations Commission*, 557 S.W.2d 669, 671 (Mo.App.1977); *Fly v. Industrial Commission*, 359 S.W.2d 481, 483 (Mo.App.1962).

The judgment of the circuit court must therefore be reversed, and the decision of the Commission reinstated. Upon remand to the circuit court, the cause should be returned to the Commission for further proceedings in accordance with this opinion.

All concur.