FRANCIS HOWELL SCHOOL DIS-TRICT, **Plaintiff-Respondent,**

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION, DIVISION OF EMPLOYMENT SECURITY, et al., Defendants-Appellants.**

No. 48482.

Missouri Court of Appeals, Eastern District, Division Four.

March 12, 1985.

Susan P. Haag, Rick V. Morris, Jefferson City, for Mo. Div. of Employment Sec.

Alan J. Downs, Jefferson City, for Labor and Indus. Relations Com'n.

Paul F. Niedner, St. Charles, for plaintiff-respondent.

SNYDER, Judge.

The appellants, Labor and Industrial Relations Commission, et al., appeal from a circuit court judgment reversing the Commission's findings regarding a bus driver strike against the Francis Howell School District. The circuit court reversed the Commission's determination that the striking drivers would be eligible for unemployment benefits after a four week penalty for statutory misconduct in staging an illegal strike. The judgment is affirmed in part, reversed in part, and the cause is remanded.

Appellants challenge the circuit court's finding that, as a matter of law, persons who cease work because of an illegal labor dispute leave their work voluntarily for purposes of unemployment benefits. Appellants also charge the circuit court erred in finding the claimants were not available for work and in failing to decide whether four of the claimants refused suitable work.

The discharge of two Francis Howell School District bus drivers, one of them a shop steward, became final on September 12, 1979. On September 13, approximately 35 of the 57 drivers failed to report for work, and instead picketed their employer. The bus drivers were under a May 3, 1979 court order restraining them from striking.

On September 14, 1979 the school district sent each striking worker a mailgram stating that his employment would be terminated if he did not report for work on Monday, September 17. September 17 had been set previously as the day for drivers to bid on the routes they were to drive; the school district did not allow striking drivers to bid on the routes at 9:00 a.m. after they had failed to report for work at 7:00 a.m.

The employer began hiring workers to replace the strikers. In early October the school district sent letters to some of the striking drivers, offering them the chance to re-apply for work. The drivers who responded to the school district's offer to apply did not accept work because their pay and seniority would have been less desirable than they were before the strike.

The employees applied for unemployment compensation. They pursued their claims through an employment security deputy, the appeals tribunal, the Labor and Industrial Relations Commission, and finally the Circuit Court of St. Charles County, from whose judgment the Commission appeals.

The deputy found that the claimants were discharged for their misconduct in participating in an illegal strike, and disqualified them for benefits for four weeks as authorized in § 288.050.2. RSMo. Cum. Supp.1984.

The appeals tribunal modified the deputy's determination by increasing the disqualification time from four weeks to eight weeks, the maximum under the statute except in the case of aggravated misconduct.

The Commission was aware that most claimants engaged in the illegal work stoppage knew it was unlawful for them to strike and, more serious, knew they were enjoined from striking by a circuit court temporary restraining order. Nevertheless, the Commission failed to find there was aggravated misconduct under § 288.-050.2 RSMo.Cum.Supp.1984, overruled the eight week disqualification determination of the appeals tribunal, and reinstated the lesser four week disqualification.

The circuit court held that: (1) the record showed that the claimants were not available for and actively seeking work; (2) the claimants' strike was illegal and forbidden by a court order, therefore not a "labor dispute" within the meaning of § 288.040.-4(1) RSMo.Cum.Supp.1984; and (3) the claimants voluntarily quit their jobs rather than being discharged by their employer.

An appellate court reviews the decision of the Commission and not the findings of the circuit court. *Chrysler Corp. v. Division of Employment Security*, 628 S.W.2d 359, 360[1] (Mo.App.1981). The

findings of the Commission on the facts, if supported by competent and substantial evidence, shall be conclusive in the absence of fraud, and the jurisdiction of the reviewing court shall be confined to questions of law. § 288.210 *Division of Employment Security v. Labor and Industrial Relations Commission,* 625 S.W.2d 882 (Mo.App. 1981).

The circuit court correctly held that the record on appeal does not include evidence that the bus drivers had been available for and "actively and earnestly seeking work" as § 288.040.1(2) RSMo.Cum. Supp.1984 requires. The only evidence which appears is that four of the drivers were invited to apply for limited re-employment with the school district at lower pay.

The offer and refusal of these jobs is not enough evidence for this court to determine the drivers' eligibility for benefits. The cause is remanded to allow specific findings on whether the striking drivers were available for and actively and earnestly seeking work. *John Epple Const. v. Labor & Industrial Relations Commission,* 647 S.W.2d 926, 929 (Mo.App. 1983).

The deputy's determination contained no finding that the claimants were available for and actively seeking work, a prerequisite to the payment of benefits under § 288.040.1(1) RSMo.Cum.Supp.1984.

The appeals referee refused to require any evidence of availability for work because the deputy had made no finding of availability. Appellant's counsel objected to this failure to receive evidence throughout the hearing.

The Commission said that the issue of availability was beyond the scope of the hearing and based that part of its decision on a "presumption" that claimants are able and available because of the requirement that they file a weekly claim card and visit the local office monthly.

Commission cited no law to support the existence of such a presumption. The statute and cases require a finding of availability by the deputy. *John Epple Const.*

*v. Labor & Industrial Relations Commission, supra.*

The burden of proof on the right to unemployment benefits is on the claimant. Where there is no evidence in the record that a claimant is available for work, a decision that the claimant is eligible for benefits is unsupported by evidence and must be reversed. *Lester E. Cox Medical Center v. Labor & Industrial Relations Commission,* 593 S.W.2d 610, 612[1-3] (Mo.App.1980).

In *Lester E. Cox Medical Center* the court held that the determinations of the appeals tribunal and the commission upholding the deputy's finding that claimant was qualified for benefits were not based on fact. So it is here.

There was nothing in the record to show why this essential element of eligibility for benefits was ignored except the original failure by the deputy to consider availability for work. The statute requires the deputy to find availability. The Commission's decision as to all claimants must be reversed on this point.

Appellants rely on *Chemtech v. Labor and Industrial Relations Commission,* 617 S.W.2d 121 (Mo.App.1981), but Chemtech is distinguishable. In *Chemtech* the deputy denied benefits because of a labor dispute. In the case under review the deputy awarded benefits without the essential finding of availability for work.

In *Chemtech* the appeals tribunal found there was no work stoppage and that claimants were not ineligible for benefits because of a labor dispute under § 288.040.5(1) RSMo.Cum.Supp.1984. The Commission denied the employer's petition for review, thus upholding the appeals tribunal decision. The circuit court affirmed the denial and the employer appealed.

One of the points raised on appeal in *Chemtech* was the failure to find claimants were available for work. The court of appeals could not tell from the record whether a deputy had determined that the claimants were eligible for benefits after the

appeals tribunal found that there was no stoppage of work. Apparently there never was a determination of eligibility. Therefore the court of appeals denied the point. In the case under review there was a determination of eligibility. *Chemtech* does not help appellants.

The circuit court, contrary to the Commission's finding, held that because the strike was illegal, it could not be a "labor dispute." Section 288.040.5 RSMo.Cum. Supp.1984 does not distinguish between legal and illegal strikes.

 Whether claimants were unemployed because of a labor dispute is a fact question. *Poggemoeller v. Industrial Commission, Division of Employment Security*, 371 S.W.2d 488, 499[6–7] (Mo.App. 1963). The statute refers to labor disputes, not strikes. There was substantial evidence to support the Commission's factual determination that claimants were unemployed because of a labor dispute.

The circuit court also held that the striking employees voluntarily quit their jobs. The facts of the case, however, support the Commission's determination that the employees were discharged on September 17, 1979. The employees refused to work and picketed to protest the firing of two fellow employees. The fact that the workers picketed indicates that they intended to strike, not to quit.

 The employer justifiably discharged the employees who refused to work because the strike was wrongful. The mailgrams which the employer sent to striking workers threatened to discharge anyone who continued to strike on September 17, 1979.

Research revealed no Missouri cases distinguishing a quit from a discharge. Although not binding on this court, federal labor law provides some valuable guidance. In *Diversified Case Co., Inc.*, 263 N.L.R.B. No. 119, 111 LRRM 1145 (1982), two employees failed to return to work after lunch because they were dissatisfied with certain pay deductions and shop conditions. The workers told their employer of their intent not to return. Their manager responded that failure to return would end their jobs. When they came to work the next day the employer refused to allow the two workers to work. The National Labor Relations Board held that the workers were discharged. The fact that they came in the next day indicated that they did not intend to quit.

In *Ridgeway Trucking Co.*, 243 N.L.R.B. 1048, 1049 n. 8 (1979) *enforced NLRB v. Ridgeway Trucking Co.*, 622 F.2d 1222 (5th Cir.1980), an employer's telling recalcitrant employees to "work or leave" was held to be a discharge ultimatum.

In the light of the federal precedents the best interpretation of the cessation of employment in the case at bar is that the school district discharged the employees pursuant to their illegal job action. The employees did not quit, but were discharged for good cause.

The judgment of the circuit court is affirmed in its finding that payments to claimants were improperly made because there was no proof claimants were available for work and actively seeking work. The circuit court judgment is reversed in its finding there was no labor dispute under the statute and that claimants voluntarily left work on September 17, 1979.

The cause is remanded. Upon remand to the circuit court the cause should be returned to the Commission for additional findings of fact on claimants' availability for work, if the Commission deems such a procedure necessary or advisable.

SMITH, P.J., and SATZ, J., concur.