**ST. JOHN'S REGIONAL MEDICAL
CENTER, Appellant,**

v.

**LABOR AND INDUSTRIAL RELATIONS
COMMISSION, Division of Employment Security of the Department of Labor and Industrial Relations of the State of Missouri, and Roger Elsey, Respondents.**

**No. WD 44351.**

Missouri Court of Appeals,
Western District.

Sept. 3, 1991.

Donald W. Jones, Timothy E. Gammon, Rebecca A. McCoy, Springfield, for St. John's Regional Medical Center.

Victorine R. Mahon, Jefferson City, for Labor & Industrial Relations Com'n.

Sandy Bowers, Jefferson City, for Div. of Employment Sec.

Before BERREY, P.J., LOWENSTEIN, C.J., and BRECKENRIDGE, J.

BERREY, Presiding Judge.

St. John's Regional Medical Center, appellant, challenges an administrative decision of the Labor and Industrial Relations Commission (Commission) finding that claimant, Roger Elsey, was not disqualified for unemployment insurance by reason of leaving his employment voluntarily as he quit with good cause attributable to his work or employer. Reversed.

Roger Elsey was employed as a carpenter by St. John's Medical Center for approximately five years. His work was evaluated yearly and his evaluations were excellent. Elsey was evaluated on October 26, 1986, by Robert Harrington, the new director of the department. In evaluating Elsey's position as "lead carpenter" Harrington rated Elsey as having excellent skills as a carpenter but as having attitude problems toward those in authority. Elsey resigned his position of lead carpenter on October 24, 1986, citing as his reason "to work on bringing my projected attitude toward management, the department, and the Medical center more in line with what you and my supervisors desire in an employee."

Following his resignation, Elsey got into trouble with the new lead carpenter, Dean Barnes. Elsey claimed that Barnes pro-voked these altercations. Elsey was suspended for three days.

During Elsey's suspension, a department meeting was called by Harrington to explain the suspension. Elsey was not present at that meeting but he was described as a "troublemaker." At another meeting the head of another department, Dan Crutcher, labeled appellant a "vandal." The claimant did not learn of these statements until nearly three weeks after his return to work. He decided to quit, giving two weeks notice.

Elsey's initial claim for unemployment was denied after a deputy for the Missouri Division of Employment Security determined that claimant quit without good cause. The Appeals Tribunal reversed the decision and upon review the Commission affirmed the decision of the Appeals Referee. This was in turn affirmed by the circuit court.

Appellant claims that the decision of the Commission was in error as the evidence overwhelming shows that Elsey voluntarily quit his job and failed in his burden to show good cause thus disqualifying him from receiving unemployment compensation. Appellant further claims a denial of due process at the hearing level at it was not given an opportunity to view documents offered into evidence by Elsey and accepted by the referee.

■ In our review, we look at the decision of the Commission, not that of the circuit court. *Francis Howell School Dist. v. Labor & Industrial Relations Comm'n,* 687 S.W.2d 681, 683 (Mo.App.1985). We review the Commission's findings of fact to see whether they are supported by competent and substantial evidence. *Rothschild v. Labor & Industrial Relations Comm'n, Div. of Employment Sec.,* 728 S.W.2d 720, 721 (Mo.App.1987). The Commission's conclusions of law are not, however, binding upon us. *Id.*

■ A claimant bears the burden of establishing that he left his employment for "good cause." *Missouri Div. of Employment Sec. v. Labor & Industrial Relations Comm'n,* 739 S.W.2d 747, 749 (Mo.

App.1987). Whether a claimant had good cause for terminating his employment is a matter of law. *Brannock v. Labor & Industrial Relations Comm'n*, 745 S.W.2d 722, 723 (Mo.App.1987). "Good cause is limited to instances where the unemployment is caused by external pressures so compelling that a reasonably prudent person would be justified in terminating employment." *Charles v. Missouri Div. of Employment Sec.*, 750 S.W.2d 658, 661 (Mo.App.1988). The facts motivating the employee to quit must be "real not imaginary, substantial not trifling, and reasonable not whimsical, and *good faith* is an essential element." *Belle State Bank v. Industrial Comm'n*, 547 S.W.2d 841, 846 (Mo.App.1977).

Accepting the findings of fact as correct, as we are required to do in this review, the derogatory statements made in Elsey's absence do not give Elsey good cause to voluntarily quit his job. We agree with the dissenting member of the Commission who stated, "Although I can sympathize with this claimant's hurt feelings upon learning that derogatory comments had been made about him by hospital officials in his absence, I do not believe this experience was sufficient cause for the claimant to abandon a job paying $9.61 per hour in order to join the ranks of the unemployed." While there is no Missouri case which deals precisely with the situation in the instant case, the case of *Backer's Potato Chip Co. v. Labor & Industrial Relations Comm'n*, 679 S.W.2d 909 (Mo.App. 1984), is instructive. In *Backer's*, the employee was subjected to the profanity and anger of the company president after several mistakes the employee had made with a new potato chip cooker. *Id.* at 911. The employee walked out and filed for compensation. This court, in reversing the decision of the Commission, found the employee to be without good cause. *Id.* at 912. The court also noted that "employees are generally required to attempt to resolve differences with their employers before leaving their employment." *Id.*

In the instant case the derisive comments made about claimant were not even made to his face. Elsey never spoke to Harrington about these statements and it appears that Harrington and Sandi McReynolds, the personnel director, were unaware of the entire situation. It also is clear that Elsey did not feel compelled to leave his position. Elsey gave two weeks notice and worked these two weeks before he quit.

The judgment is reversed and this cause is remanded with directions to the circuit court to remand the cause to the Labor & Industrial Relations Commission with directions to enter a finding that Elsey did not leave his employment for good cause and is therefore ineligible for benefits.

All concur.