Thomas P. McGRATH, Appellant,

v.

SATELLITE SPRINKLER SYSTEMS, INC., Respondent.

Thomas P. McGRATH, Appellant,

v.

NEW ANTIQUES, Respondent.

No. 65115.

Missouri Court of Appeals, Eastern District, Division One.

June 21, 1994.

Mark Alan Helfers, Clayton, for appellant.

George T. Floros, St. Louis, for Satellite Sprinkler Systems, Inc.

Mark Michael Anson, St. Louis, for New Antiques.

Jeremiah W. (Jay) Nixon, Atty. Gen., Maria W. Campbell, Asst. Atty. Gen., Jefferson City, for Second Injury Fund.

CRIST, Judge.

Thomas P. McGrath (Employee) appeals from the denial of two claims he filed for workers' compensation benefits against two different employers for injury to his right eye. The appeals have been consolidated.

## I. FACTS

On September 14, 1990, Employee filed two claims for workers' compensation benefits. He filed a claim against New Antiques and a second claim against Satellite Sprinkler Systems, Inc. (Satellite). In his claim against New Antiques, Employee alleged he had incurred an injury to his right eye on October 7, 1989, while working for New Antiques. He averred something flew into his eye while he was hitting a nail in a two-by-four with a hammer. His claim against Satellite averred he again injured his right eye sometime in May of 1990 while working for Satellite when something flew up from a trenching machine and struck his right eye.

The Division of Workers' Compensation held two separate hearings on the same date to determine the liability of New Antiques and Satellite. At the New Antiques hearing of July 21, 1992, Employee testified he had caught a piece of metal fragment in his eye when he was pulling a two-by-four from a concrete floor. He stated three persons were present at the time, his supervisor and two men named "Jay" and "Steve." He stated he went to the bathroom to check his eye but could not find anything in it.

Employee also testified he left his job at New Antiques a few days later. He began a new job at Satellite in March or April of 1990. While on the new job, he received a second injury to his right eye in late May of 1990. In early July 1990, Employee averred

he woke up one morning and could not see out of his right eye. Employee specifically testified he did not experience any blurring in his right eye until a few weeks before he sought treatment. Employee sought treatment on July 3, 1990, at the Florissant Eye Clinic where he was referred to Dr. Escoffery. Dr. Escoffery removed a mineral fragment from Employee's eye. Employee's eyesight initially improved but eventually a traumatic cataract obscured his vision. Employee needs surgery to remove the cataract.

The medical evidence adduced consisted of depositions from Howard Lewin, M.D., and Francis O'Donnell, M.D., as well as Employee's medical records. The center of controversy at the hearing was which accident, the one at New Antiques or the one at Satellite, caused Employee's subsequent eye injuries.

Dr. Lewin first saw Employee on February 20, 1991, to conduct an ophthalmological medical evaluation of Employee. Dr. Lewin testified he had initially been of the opinion Employee's accident at Satellite caused the eye injury. He stated he had based this opinion on the fact Employee told him at the first examination he lost his vision immediately after the Satellite accident. However, he stated he now believed the Satellite accident did not cause Employee's injuries, because Employee's other medical records revealed he told Wilson Bourjolly, M.D., he had blurry vision for the past five months before his second accident.

On cross-examination, the following exchange occurred between New Antiques' attorney and Dr. Lewin:

Q. You said earlier that either injury could have caused the problems he had with his eye; is that correct?

A. Yes, sir, and that was based on the history the man gave me. And I wanted to be fair about it and I think at that point in time when I made that statement I really couldn't tell just by looking, examining him at this late date which injury caused it. But based on Dr. Bourjolly's record of that date, July something or other of '90, in which he gave the history that five months previously he had blurred vision. And the fact that Dr. Bourjolly found a hole in the iris and found evidence

of siderosis, in my opinion, today, would be that the second injury did not cause it. That it preceded the second injury.

Dr. Lewin further stated Employee did not relate to him any problems with blurred vision after the first injury and up until the second injury. He stated this history was inconsistent with the history Employee related to Dr. Bourjolly.

Dr. O'Donnell first saw Employee on February 26, 1992, after Employee's vision had deteriorated. In his opinion, the damage to Employee's eye had occurred in a "penetrating" injury as opposed to a "blunt" injury. However, Dr. O'Donnell was unable to say which of the two injuries was the penetrating injury because no medical evidence existed between the two events.

The Administrative Law Judge (ALJ), William Greer, denied workers' compensation benefits for Employee. This denial was affirmed by the Labor and Industrial Relations Commission (Commission), who adopted the ALJ's findings of fact. The Commission found an accident had occurred in October of 1989 while Employee was employed at New Antiques. The Commission further found the accident arose out of and in the course of Employee's employment. However, the Commission denied benefits, finding Employee had been unable to prove medical causation, that his accident at New Antiques caused his ultimate injuries. The Commission made the following findings:

A more difficult question is that of medical causation. Given the history of two accidents Dr. O'Donnell, on behalf of the employee, was unable to state which accident caused the employee's eye condition. He felt the penetrating injury was probably the cause, but could not state which accident was the penetrating injury. (Exhibit B, page 19)

Dr. Lewin's testimony was that, based on the employee's history that immediately after the second injury he had vision problems, the second injury was the cause. (Exhibit A, page 15) However, when a review of the records showed a history of blurriness for five months prior to July 1990, he changed his opinion and stated

that the first injury was the cause of the employee's eye problems. (Exhibit A, page 21) The employee's testimony was that the blurriness started after the second accident, but not immediately.

A hearing was also held on Employee's claim against Satellite on July 21, 1992. The same medical evidence was presented at Satellite's hearing as had been presented at New Antiques' hearing. Employee testified he had been employed by Satellite in March or April of 1990 to install sprinkler systems. In late May of 1990, Employee was working with Don Weber and two men named Rick and John installing a sprinkler system on a one-day job somewhere in west St. Louis County. Employee stated either Don or John was operating a trencher, which digs narrow holes in the ground, to dig a trench underneath the sidewalk. Employee averred he was moving dirt out of the hole while in close proximity to the trencher when "something" flew up into his right eye. He stated he told both Don and Rick about the incident, and he later told the owner Bob Saettele after they returned to the business location.

Donald Weber testified Employee never reported any right eye injury to him. Deborah Saettele, the vice-president and secretary of Satellite, testified her records revealed only one occasion on which Employee worked with Don Weber, Rick and John on the same day, but that job was not in west St. Louis county and lasted longer than one day. Both Deborah Saettele and Bob Saettele, the owners, testified Employee never informed them of any injury.

The ALJ, William Greer, denied workers' compensation benefits to Employee. The Commission adopted Greer's denial and findings of fact. The Commission found Employee had failed to meet his burden of proving an accident had occurred. It further noted that even if Employee could have proved an accident occurred at Satellite, Employee had failed on the issue of medical causation. The Commission stated, in pertinent part:

Claimant was unable to provide the specific date or location of the accident and his general description of the job at which the accident occurred was directly contradicted by the testimony of Debbie Saettele and the Satellite Sprinkler System payroll records.

In addition to the dispute over where and when the accident occurred, McGrath's testimony about reporting the injury to his supervisor and employer was directly contradicted by both Don Weber and Bob Saettele. Mr. Saettele also testified that neither McGrath nor any other employee would have been working up close to the trencher shoveling dirt while the machine was in operation.

Claimant's credibility was further undermined by his inconsistent and vague testimony concerning any loss of vision from the prior right eye injury. Christine Gaines was told by the claimant that a piece of metal from a nail went into the eye and caused claimant's vision to become hazy. Although the claimant eventually admitted that he did, in fact, have some vision problems after this incident, he did so only after Ms. Gaines had testified and the recorded statement had been introduced into evidence. It is difficult, if not impossible, to reconcile the differing testimony the claimant gave on this issue.

The Commission further found the medical records and testimony did not support Employee's claim he was injured at Satellite, but rather indicated he had blurry vision for about five months prior to July 3, 1990. The records had also contained differing histories, which the Commission interpreted to indicate the accident took place two to five months prior to hospital admission and did not corroborate Employee's claim of an accident in late May of 1990.

██ Employee appeals from both denials. His points relied on for both appeals are virtually identical. In the interest of expediency, this court has chosen to examine the two cases together and has consolidated them.

Upon review, an appellate court:

shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1, RSMo 1986; *St. John's Reg. Medical Center v. LIRC,* 814 S.W.2d 698, 699 [1] (Mo.App.1991). Further, the evidence and all its legitimate inferences must be viewed in the light most favorable to the Commission's decision. *Parker v. Mueller Pipeline, Inc.,* 807 S.W.2d 518, 520 (Mo.App. 1991). The Commission is the ultimate trier of the facts and it alone is the arbiter of witness credibility. *Webber v. Chrysler Corp.,* 826 S.W.2d 51, 54 [3] (Mo.App.1992).

## II. NEW ANTIQUES APPEAL

In his five points relied on, Employee essentially raises three challenges to the Commission's finding he failed to show medical causation, that the accident at New Antiques caused his subsequent eye injuries. We examine Employee's points out of order.

In Points II and V, Employee argues the Commission's finding he was unable to prove medical causation is against the weight of the evidence and unsupported by sufficient competent evidence.

■ Employee bears the burden of proving that not only did an accident occur, but it resulted in injury to him. *Dolen v. Bandera's Cafe & Bar,* 800 S.W.2d 163, 164 [2] (Mo.App.1990). "Medical causation, not within the common knowledge or experience, must be established by scientific or medical evidence showing the cause and effect relationship between the complained of condition and the asserted cause." *Brundige v. Boehringer Ingelheim,* 812 S.W.2d 200, 202 [5] (Mo.App.1991). This requires Employee's medical expert to establish the probability Employee's injuries were caused by the work accident. *Selby v. Trans World Airlines, Inc.,* 831 S.W.2d 221, 223 [4] (Mo.App.1992). The ultimate importance of the expert testimony is to be determined from the testimony as a whole and less than direct statements of reasonable medical certainty will be suffi-

cient. *Choate v. Lily Tulip, Inc.,* 809 S.W.2d 102, 105 [2] (Mo.App.1991).

■ The Commission's finding Employee failed to prove medical causation is supported by sufficient competent evidence and is not against the weight of the evidence. First, both of Employee's experts made equivocal statements about which of the two alleged incidents caused the injury. In his deposition, Dr. O'Donnell was unable to conclude which accident caused the injury, even though he had concluded prior to trial the New Antiques accident was the cause. Dr. Lewin's opinion varied based upon Employee's recited history of vision problems. He originally stated the Satellite accident was the cause, because of Employee's remark he lost his vision after the Satellite accident. However, he changed this opinion when he observed Employee told Dr. Bourjolly he had blurry vision before the Satellite accident.

■ At the hearing, though, Employee clearly stated he did not have vision problems until after the Satellite accident. Therefore, Dr. Lewin's opinion the New Antiques accident caused Employee's injury is incompatible with Employee's testimony and could correctly be disregarded. As a consequence, Employee was unable to show which accident caused his injury. It is Employee's burden to prove the extent of his disability attributed to the New Antiques accident. *Bersett v. National Super Markets,* 808 S.W.2d 34, 36 [1] (Mo.App.1991). Point denied.

■ In Points I and IV, Employee argues the Commission's findings in the two cases do not support its decision in New Antiques because, when taken together, the findings are internally inconsistent. Employee argues the Commission's finding in Satellite he did not incur an accident at Satellite precludes it from relying on Employee's contentions of two accidents at his New Antiques hearing to show Employee failed to prove medical causation.

■ Employee's argument is without merit. Even without considering whether a second accident occurred at Satellite, Employee's expert testimony regarding medical causation still fails. Their inability to aver medi-

cal causation with reasonable medical certainty was based on Employee's own inconsistent medical history as recited to the various doctors. It was within the Commission's province to determine what weight it would accord that evidence. *Mark Twain Manor Homes, Inc. v. LIRC*, 631 S.W.2d 72, 72 [1] (Mo.App.1982). There is no error. Point denied.

■ Employee urges in Point III that he did prove medical causation because he was able to show an injury indivisible between two potentially liable parties. We disagree with Employee's contention he showed indivisible injury. First, the medical experts could have testified which accident caused his injury if only Employee had consistently informed them about when his symptoms first appeared. There was scant evidence the two incidents combined to cause one injury, as shown in the indivisible injury cases. *See, Barlow v. Thornhill*, 537 S.W.2d 412, 418 (Mo. banc 1976). Further, the tort theories referenced by Employee are generally not applicable in Workers' Compensation law. Additional discussion of this point and other extraneous arguments is unnecessary. Point denied.

### III. SATELLITE APPEAL

■ In his appeal from the Satellite decision, Employee's points essentially raise the same issues as averred in New Antiques to challenge the Commission's finding regarding medical causation. However, in denying benefits from Satellite, the Commission further relied upon its finding it did not believe Employee's claim he had an accident while working for Satellite.

An employer is liable under Workers' Compensation "for personal injury or death of the employee *by accident* arising out of and in the course of his [or her] employment...." § 287.120.1, RSMo 1986 (emphasis added). The word "accident" is defined as "an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury." § 287.020.2, RSMo 1986.

The Commission did not believe Employee's claim of an accident. This decision is supported by sufficient competent evidence. § 287.495.1(4). First, Donald Weber testified Employee never reported any right eye injury to him, even though Employee claimed otherwise. Deborah Saettele, the vice-president and secretary of Satellite, testified her records revealed only one occasion on which Employee worked with Don Weber, Rick and John on the same day, but that job was not in west St. Louis county and lasted longer than one day. Both Deborah Saettele and Bob Saettele, the owners, testified Employee never informed them of any injury. This testimony directly contradicted Employee's testimony on the same issue. The Commission specifically stated it did not find Employee's testimony regarding the accident to be credible. In addition, none of the other grounds for reversal appear. § 287.495. We affirm.

Judgments affirmed.

CRANDALL, P.J., and REINHARD, J., concur.