Edna HUBBERT, Appellant,

v.

BOATMEN'S BANK, Respondent.

No. WD 53278.

Missouri Court of Appeals,
Western District.

Submitted March 6, 1997.

Decided April 29, 1997.

Jerrold Kenter, Kansas City, for appellant.

Steven J. Quinn, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and SMART and EDWIN H. SMITH, JJ.

SMART, Judge.

Edna Hubbert appeals a final award of the Labor and Industrial Relations Commission ("Commission") denying her Workers' Compensation benefits. Ms. Hubbert claims that the Commission erred in determining that she was not entitled to benefits. Because we hold that the determination of the Commission was supported by sufficient competent evidence and was not against the overwhelming weight of the evidence, we affirm.

**FACTUAL BACKGROUND**

Ms. Hubbert worked at Boatmen's Bank as a keypunch operator. She began work at Boatmen's Bank in 1967. Initially, Ms. Hubbert worked in the check processing department operating a Bank Tech machine. Her job required that she perform many repetitive tasks. Ms. Hubbert later went to work in the balancing department at the bank. Her work in that department also involved performing many repetitive tasks.

In January or February of 1989, Ms. Hubbert's right hand started to bother her. She told Marla Kimsey, her department supervisor, that she was having trouble with her hands in that she was beginning to lose her grip and have some swelling. She did not mention that she believed that the pain in her hand was work-related. Ms. Hubbert went to see her family doctor in March 1989. He sent her to a specialist. Eventually, she was referred to Dr. Gary L. Porubsky. Dr. Porubsky is board certified in orthopaedic surgery, and has earned a certificate of qualification for hand surgery.

Dr. Porubsky first examined Ms. Hubbert on September 27, 1989. X-rays taken of Ms. Hubbert's left wrist revealed an ulnar minus variant, meaning that the ulna is shorter than the radius. An ulna minus variant, a congenital condition, is considered normal in approximately 23% of the population. In examining x-rays of Ms. Hubbert's right wrist, Dr. Porubsky discovered that she had Stage 3 Kienbock's disease. Kienbock's is a disease process involving the carpal bones, especially the lunate bone, in which there is a loss of blood supply. Stage 3 Kienbock's means that there has been some collapse and fragmentation of the bone. There is sometimes a relationship between an ulna minus variant and Kienbock's; there is a higher than average incidence of ulna minus variant among wrist patients with Kienbock's disease.

October 18, 1989 was Ms. Hubbert's last day of work at Boatmen's Bank. The following day, October 19, 1989, Dr. Porubsky performed an arthrodesis (a procedure to stabilize the wrist) on Ms. Hubbert's right wrist. Dr. Porubsky removed the lunate bone and took a bone from the ilium to fuse the scahoid bone to the capitate bone. After the surgery, in December 1989, Dr. Porubsky prescribed rehabilitation therapy which continued until April 1990. On August 8, 1990, Dr. Porubsky released Ms. Hubbert, informing both Ms. Hubbert and Boatmen's Bank that she could return to work. Ms. Hubbert sought a second opinion. On October 4, 1990, she consulted Dr. Larry Frevert. Dr. Frevert also told her that she could return to work. At the request of her attorney, Ms. Hubbert went to see Dr. James Hopkins for evaluation. Dr. Hopkins' discipline is plastic surgery.

On January 10, 1991, Ms. Hubbert filed a claim for compensation with the Division of Workers' Compensation. An amended claim was file August 24, 1993. A hearing on the

claim was held on September 6, 1995. Ms. Hubbert and Dr. John Bopp, a psychologist with a subspecialty in vocational evaluation, presented live testimony in support of her claim. The depositions of Dr. Hopkins and Dr. Porubsky were received into evidence. Dr. Porubsky, in his deposition testimony, opined that Ms. Hubbert's condition was not caused by the tasks that she performed at Boatmen's Bank. Dr. Hopkins, in contrast, believed that her condition was related to her duties at the bank.

The Administrative Law Judge ("ALJ") ruled that Ms. Hubbert had not sustained an accident, series of accidents or occupational disease arising out of and in the course of her employment with Boatmen's Bank. The ALJ made detailed findings, starting with the fact that all the parties agree that Ms. Hubbert suffers from Kienbock's disease. He pointed out that the only sources of evidence relating to the cause of Ms. Hubbert's disease were the depositions of Dr. Hopkins and Dr. Porubsky. The ALJ did not find Dr. Hopkins' deposition to be credible, observing that "Hopkins provides absolutely no medical support" for his opinion that Ms. Hubbert's condition was related to her work as a keypunch operator. The ALJ explained:

> Hopkins testified that his practice is limited to the specialty of plastic surgery. He also testified on a number of occasions that he would defer to orthopedic surgeons with respect to the diagnosis and treatment of Kienbock's disease. Dr. Hopkins left the Court with the clear impression that he was uncomfortable testifying about this case as he repeatedly reminded the attorneys deposing him that he did not treat Kienbock's and that he was a plastic surgeon and not an orthopedic physician.

> Dr. Hopkins admitted that he knows very little about Kienbock's disease....

> It also became obvious during the course of his deposition that Dr. Hopkins was relying for most of his conclusions on a medical text to which he continually referred and which he had reviewed in preparation for his deposition. Unfortunately for Dr. Hopkins, that text, *Operative Hand Surgery, Second Edition,* David P. Green, Volume 2, did not support Hopkins' opinion

that Kienbock's can develop as a result of micro traumas....

Hopkins had to admit that, according to Green, Kienbock's can develop without any known cause, but that most frequently the condition is brought on by a single or multiple fracture resulting in secondary vascular impairment. Based on the history that he obtained Hopkins was in no position to deny that the Claimant could have had a traumatic injury to her right arm or wrist several years ago which eventually lead to the development of Kienbock's. Interestingly, the Claimant testified that she was involved in an automobile accident several years ago before the onset of her complaints in which she sustained injuries to the right side of her body.

The ALJ found that the testimony given by Dr. Porubsky in his deposition was the only credible testimony in the case. Dr. Porubsky testified that the repetitive tasks performed by Ms. Hubbert would not cause an individual to develop Kienbock's disease. Dr. Porubsky, in contrast to Dr. Hopkins, was a board certified orthopedic surgeon. Seventy-five percent of his practice relates to the upper extremities. The ALJ recounted his reliance on Dr. Porubsky's opinion:

> Dr. Porubsky testified that the Claimant has an ulnar minus variant condition in her forearm, a congenital condition, and testified that there is a higher incidence of ulnar minus variant in patients who develop Kienbock's and conversely there is a much higher incidence of Kienbock's in those patients who have an ulnar minus variant condition. While Dr. Porubsky admitted some type of repetitive trauma could potentially cause the onset of Kienbock's these are situations involving rather severe trauma. Dr. Porubsky specifically testified that an individual performing the tasks performed by the claimant would not cause one to develop Kienbock's. The doctor further testified that Kienbock's is not associated with any particular vocation and never in his practice has Dr. Porubsky ever seen another patient who performed secretarial/clerical type work develop this condition, nor is he aware of such a rela-

tionship having been identified in the medical literature.

Ms. Hubbert filed an application for review with the Commission as provided by § 287.480, RSMo 1994. The Commission affirmed and incorporated the award of the ALJ in its award, finding that it was supported by competent and substantial evidence. Ms. Hubbert appeals.

## STANDARD OF REVIEW

■ Review of this case is governed by Section 287.495, RSMo 1994, which provides, in pertinent part:

Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

This court, in *Davis v. Research Medical Ctr.*, 903 S.W.2d 557, 571 (Mo.App.1995), outlined the process for review of an award made by the Commission. This court will not substitute its judgment for that of the Commission and the weight of the evidence, as well as the credibility of the witnesses, are for the Commission to decide. *Id.* Review is a two-step process. First, an appellate court must determine whether the whole record, viewed in the light most favorable to the award, contains sufficient competent and substantial evidence to support the Commission's award. *Id.* If it does, the court, in the second step, makes a determination as to whether the award is against the overwhelming weight of the evidence. *Id.* In this second step, the reviewing court considers all of the evidence in the record, including that not favorable to the award. *Id.*

## CAUSATION

Ms. Hubbert claims that there was sufficient competent evidence in the record to justify an award of permanent partial disability. She contends that she was required to prove causal connection to job related activities only by a probability, and not to a reasonable medical certainty. She cites *McGrath v. Satellite Sprinkler Sys.*, 877 S.W.2d 704 (Mo.App.1994) in support of this proposition. In *McGrath*, the court stated that establishing a causal connection between an injury and the workplace, "requires Employee's medical expert to establish the probability Employee's injuries were caused by the work accident." *Id.* at 708. Ms. Hubbert reasons that since her expert, Dr. Hopkins, testified that Ms. Hubbert's condition was employment related, she has met her burden.

■ Ms. Hubbert, however, misunderstands the difference between the standard for making a prima facie case, and the standard by which we review a decision of the Commission. Since there was sufficient competent evidence from which the Commission could find that claimant was not entitled to benefits, the claimant can prevail on appeal only if she demonstrates that the decision of the Commission was against the overwhelming weight of the evidence. *Davis*, 903 S.W.2d at 571. Consequently, in her "Point Relied On," Ms. Hubbert should be contending that the decision of the Commission was against the overwhelming weight of the evidence. Rather than dismiss her appeal, however, we will review the decision as though she had properly invoked the standard of review.

■ In this case, conflicting medical evidence was presented by the employee and the employer. Ms. Hubbert presented the testimony of Dr. Hopkins, who opined that Ms. Hubbert's Kienbock's disease was related to her work. Dr. Porubsky opined that it was not. Both the ALJ and the Commission chose to accept the opinion of Dr. Porubsky. Where there are conflicting medical opinions, it is for the Commission to decide which it

will accept. *Lytle v. T–Mac, Inc.*, 931 S.W.2d 496, 502 (Mo.App.W.D.1996). Moreover, the existence of a causal relationship is a question of fact for the Commission to determine. *Henderson v. Chrysler Corp.*, 601 S.W.2d 645, 648–49 (Mo.App.1980); *Groce v. Pyle*, 315 S.W.2d 482, 490 (Mo.App. 1958).

■ In *McGrath*, the case cited by Ms. Hubbert to support her argument concerning the standard of proof, the court points out the it was within the Commission's province to make a determination concerning the weight it would accord the evidence before it. *McGrath*, 877 S.W.2d at 709. In so stating, the *McGrath* court upheld an award of the Commission denying compensation to an employee because that employee failed to prove medical causation.

In this case, the Commission's award is supported by competent and substantial evidence. Dr. Porubsky was Ms. Hubbert's treating and operating physician. He is board certified with substantial experience in hand surgery. In his deposition he testified that, while it is hypothesized that repetitive stress might be a cause of Kienbock's disease, the type of stress which might cause the disease was not the type experienced by Ms. Hubbert. Dr. Porubsky testified unequivocally that the work that Ms. Hubbert was performing as a keypunch operator would not cause her to develop Kienbock's disease. He further testified that there was nothing in the medical literature that supports the connection between keypunch employment and the disease.

### Conclusion

The Commission's award is supported by sufficient competent evidence and is not against the overwhelming weight of the evidence. Dr. Hopkins' testimony contradicted Dr. Porubsky's in some respects. In the ALJ's findings and conclusions, adopted by the Commission, the ALJ sets out the reasons that Dr. Porubsky's opinion was found to be credible. After careful review of the entire record, we conclude that there is no basis for disturbing the Commission's factual findings.

Ms. Hubbert also challenges the ALJ's finding that her claim should be denied because she did not give notice to her employer that she believed her condition to be work-related. It is unnecessary to address this point in light of our decision upholding the Commission's denial of compensation.

Affirmed.

BRECKENRIDGE, P.J., and EDWIN H. SMITH, J., concur.