**Ray TAYLOR, Appellant,**

v.

**LABOR PROS L.L.C., Respondent.**

**No. WD 75174.**

Missouri Court of Appeals,
Western District.

Jan. 8, 2013.

David H. Bony, Kansas City, MO, for appellant.

Steven J. Quinn, Kansas City, MO, for respondent.

Before Division One: THOMAS H. NEWTON, Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Ray Taylor ("Taylor") appeals from the Labor and Industrial Relations Commis-

sion's ("Commission") order in which the Commission determined that Taylor had a thirty percent permanent partial disability in his left eye as a result of a work-related injury. Taylor argues that because the employer failed to timely answer, the Commission should have deemed admitted all facts alleged in his Claim for Compensation for purposes of its decision, including Taylor's assertion that he suffered a seventy-five percent permanent partial disability to his left eye. Taylor bases his argument on 8 CSR 50–2.010(8)(B),[1] which states that when an employer fails to timely answer, "the statements of fact in the Claim for Compensation shall be deemed admitted for any further proceedings." At issue is whether the determination of a percentage of disability, known to be a factual determination, is one that should be deemed admitted when included in a statement of facts and when the employer's answer is not timely filed.

We hold that where an employer's answer to a Claim for Compensation is not timely filed, the facts deemed admitted do not extend to the disability percentage determination because that determination is strictly within the special province of the Commission to determine, regardless of the facts presented or stipulations by the parties. We find no error and affirm.

### Factual Background [2]

Ray Taylor was employed by Labor Pros, L.L.C. ("Employer"). On November 3, 2006, Taylor was striking a wooden block with a sledge hammer "when a piece of wood broke off and struck him in the left eye," causing injury. Taylor went to the emergency room with complaints of eye pain and watering. There he was seen by an ophthalmologist who noted photophobia, swelling, pain, tearing and blurred vision. Taylor was prescribed medication.

On June 6, 2007, Taylor filed a claim for compensation using the prescribed "Claim for Compensation" form.[3] On the form in Box 7, which is titled "Part(s) of Body Injured," Taylor filled in "left eye and seventy-five percent (75%) permanent partial disability to the left eye."

On July 9, 2007, Taylor again went to the emergency room with complaints of pain, redness, tearing and flashes, though no floaters were found in the eye. He was diagnosed with vitreous prolapse with pigment present in the vitreous. The doctor recommended that he follow up in one year and that he wear protective eye wear when working.

On August 31, 2010 and November 22, 2010, four years after the initial injury, Taylor was examined by Dr. Rolfe Becker at the request of Employer in connection with Taylor's claim for workers' compensation. Dr. Becker conducted two examinations and completed the "Physician's Report on Eye Injuries" as outlined in 8 CSR 50–5.020, which is the regulation governing workers' compensation eye injuries. Dr. Becker opined that Taylor had a thirty percent permanent partial disability to his left eye based upon a loss of visual efficiency. The disability was based on (1) central vision acuity, (2) field of vision, and (3) muscle function. Although Dr. Becker noted abnormal functioning of the left pupil, a painful photophobic eye was the basis of a thirty percent loss of visual acuity in the left eye. Taylor's uncorrected eye ex-

---

1. All references to the CSR are to the Missouri Code of State Regulations as current with amendments included in the Missouri Register through the most recent update.

2. The facts here are taken as found by the Commission in its Findings of Fact dated March 30, 2012.

3. The form for a Claim for Compensation is promulgated at 8 CSR 50–2.010.

ams showed vision in his left eye to have been 20/50 on the day of the accident, 20/30 in July, 2007, and 20/40 at Dr. Becker's examination in November, 2010. Taylor's corrected vision was 20/20.

Taylor testified that eye pain comes and goes and that he has trouble reading. He does not wear glasses, contacts or use eye drops, nor does he wear sunglasses inside due to sensitivity to light exposure. Taylor offered no medical testimony regarding the percentage of disability he sustained in his eye.

At trial, Taylor objected to the admission of any evidence regarding the percentage of disability to his eye based upon his argument that pursuant to 8 CSR 50–2.010(8)(B), by failing to timely answer his claim for compensation, all factual issues alleged in the claim were deemed admitted. Because his claim specifically listed that he had sustained seventy-five percent permanent partial disability to his eye, he argues that this fact is admitted and that no further proof of the extent of his disability is necessary or admissible. The Commission rejected this argument and awarded Taylor thirty percent permanent partial disability to his left eye, consistent with the medical testimony.

### Standard of Review

Our standard of review is governed by Section 287.495.1, which provides:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

"A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003). "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Id.* at 223.

Nothing requires this Court to review the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the Commission's decision. The whole record is considered to determine if there is sufficient competent and substantial evidence to support the Commission's award. A reviewing court considers whether the Commission could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it.

This Court defers to the Commission's factual findings and recognizes that it is the Commission's function to determine credibility of witnesses. This Court may not substitute its judgment on the evidence, and when the evidence before an administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding.

*Hornbeck v. Spectra Painting, Inc.,* 370 S.W.3d 624, 629 (Mo. banc 2012) (citations and quotation marks omitted).

However, "[w]hen an administrative agency decision is based on the agency's interpretation and application of the law, we review the administrative agency's con-

clusions of law and its decision *de novo*." *Mo. Veterans Home v. Brown*, 374 S.W.3d 359, 365 (Mo.App. W.D.2012) (citations omitted).

## Analysis

■ In his sole point on appeal, Taylor argues that the Commission erred in determining that Taylor had only a thirty percent permanent partial disability to his left eye because the untimely answer[4] of Employer automatically deemed admitted the facts as alleged by Taylor in his claim, pursuant to 8 CSR 50–2.010(8)(B).[5] Because Taylor alleged in his Claim for Compensation that his disability was seventy-five percent of his left eye, he argues that the Commission was bound to find this percentage and exceeded its authority when it failed to do so.

The regulation upon which Taylor bases his argument is 8 CSR 50–2.010(8)(B), which states:

> Unless the Answer to Claim for Compensation is filed within thirty (30) days from the date the division acknowledges receipt of the claim or any extension previously granted, the statements of fact in the Claim for Compensation shall be deemed admitted for any further proceedings.

■ The facts deemed to be admitted are "the statements of fact in the Claim for Compensation" form. By deeming admitted the facts contained in the Claim for Compensation, the discovery penalty limits what a party may argue.

■ The most recently updated version of the Division's Claim Form must be used and it cannot be altered or it will be rejected.[6] Although the form does not ask for the claimant's estimate of a percentage of disability, Taylor listed a percentage in the box that requested the part of the body that was injured. There is not a box or section titled "Statements of Fact" on the form. The issue, therefore, is whether a percentage of disability, when gratuitously added to the form by a claimant, should be considered a "statement of fact" subject to being deemed admitted pursuant to 8 CSR 50–2.010(8)(B).

■ The failure to timely answer results in the factual statements in the claim being admitted, but does not result in the admission of legal conclusions such as whether the injury arose out of or in the course of the employment. *Lumbard–Bock v. Winchell's Donut Shop*, 939 S.W.2d 456, 457–458 (Mo.App. W.D.1996) (overruled in part on other grounds).[7] In *Lumbard–Bock*, the employee stated in the claim form that

---

4. It is not disputed by the parties that Employer's answer was untimely.

5. This regulation is promulgated pursuant to the authority provided to the Division under section 287.650, which states: "The division of workers' compensation shall have such powers as may be necessary to carry out all the provisions of this chapter including the use of electronic processes, and it may make such rules and regulations as may be necessary for any such purpose, subject to the approval of the Labor and Industrial Relations Commission of Missouri. The division shall have power to strike pleadings and enter awards against any party or parties who fail or refuse to comply with its lawful orders."

6. *See* Instructions for Completing Claim for Compensation, WC–21 (03–12) AI. *Available at* http://www.labor.mo.gov (last visited 12/05/12).

7. "There is nothing in the constitution or section 287.495.1 that requires a reviewing court to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003). "To the extent holding otherwise, the cases listed in the appendix are overruled." *Id.* at 223. *Lumbard–Bock* was listed in the appendix.

she was injured at work while moving a cola container and that this necessitated her back surgery. *Id.* at 458. Her employer, however, presented medical records indicating that the employee was injured while picking up her purse at home. *Id.* The administrative law judge agreed that the injury occurred at home and therefore was not covered by worker's compensation. We reversed and remanded, holding that because the employer failed to timely answer, the facts regarding the existence of the injury and what caused it are deemed admitted. "In light of these factual admissions, the Commission was bound by law to assume that the claimed work accident occurred and that it was at least partially responsible for her injury." *Id.* at 458–59.

> In addition, the Commission must address the issue of what percentage of Ms. Lumbard—Bock's injury is attributable to her admitted work accident. As Ms. Lumbard—Bock concedes, although the fact of the accident at work and its causal relationship to some degree of her injury was admitted, the Commission was free to, and indeed required to, make a factual determination of what portion of her damages resulted from the work accident.

*Lumbard–Bock*, 939 S.W.2d at 459.

The untimely answer resulted in these facts being deemed admitted: (1) the accident occurred, and (2) it was at least partially the cause of claimant's injury. The cause was remanded back to the Commission for a determination of the disability percentage. *Id.* at 458.

Likewise in *Ward v. Mid–America Fittings,* when an employer failed to timely answer the employee's claim, this Court held that the Commission erred in not deeming admitted the employee's factual allegations in the claim form that (1) the injury occurred, and (2) it occurred at work. 974 S.W.2d 586, 588 (Mo.App. W.D. 1998). In *Ward,* the employee contended "that the late filing should have caused the commission to deem her allegations admitted." *Id.* at 587. Her allegations included that 1) "claimant [is] permanently and totally disabled," 2) "claimant is temporarily totally disabled and seeks benefits, past and future ..." and 3) "claimant's chair rolled out from under [her] while it was on a plastic chair protector and claimant struck her left posterior skull." *Id.* at 588. We held that "because the commission was obligated to deem [the employer] to have deemed admitted Ward's allegations, the Commission erred in finding that Ward failed to prove she fell at work in a work-related accident ..." *Id.* at 588. We then reversed and remanded the case "to the commission to consider the issue of permanent partial disability which has not been adjudicated." *Id.* Implicit in our remand back to the Commission to determine only the percentage of disability was a rejection that the Commission was bound to deem admitted *all* of the claimant's allegations when the employer fails to timely answer.

The Eastern District of this Court reached the same result in *Hendricks v. Motor Freight Corporation* when it held that only the "fact of the accident" was deemed admitted when an employer untimely answered. 570 S.W.2d 702 (Mo. App. E.D.1978).

Our courts have recognized that the employee's average weekly wage is a fact that is admitted by an employer's untimely answer. *Aldridge v. S. Mo. Gas Co.,* 131 S.W.3d 876 (Mo.App. S.D.2004). Even the factual allegation of "max rate" as to the average weekly wage was recently deemed admitted by an untimely answer, because it was a factual allegation that was easily computed by the statute and rules in effect at the time of the accident. *T.H. v. Sonic*

*Drive In of High Ridge,* 388 S.W.3d 585, 594 (Mo.App. E.D.2012).

■ However, it is well established that "the determination of a specific amount or percentage of disability awarded to a claimant is a finding of fact within the special province of the Commission." *Angus v. Second Injury Fund,* 328 S.W.3d 294, 304 (Mo.App. W.D.2010) (*quoting Landers v. Chrysler Corp.,* 963 S.W.2d 275, 284 (Mo.App. E.D.1997)); *See also Banner Iron Works v. Mordis,* 663 S.W.2d 770, 773 (Mo.App. E.D.1983); *Reece v. St. Joseph Lead Co.,* 465 S.W.2d 849, 852 (Mo.App. E.D.1971); *McAdams v. Seven–Up Bottling Works,* 429 S.W.2d 284, 289 (Mo.App. W.D.1968); *Barron v. Mississippi Lime Co. of Mo.,* 285 S.W.2d 46, 48 (Mo.App. E.D.1955). The courts have repeatedly said that the extent and percentage of disability is within the special province of the Commission *to determine. Davis v. Day–Brite Lighting, Inc.,* 366 S.W.2d 84, 88 (Mo.App. E.D.1963) (emphasis added).

■ "It is the exclusive province of the Commission to determine the matters of disability." *Carter v. Frito–Lay,* 913 S.W.2d 341, 343 (Mo.App. E.D.1995) (citing *Robinson v. Krey Packing Co.,* 467 S.W.2d 91, 95 (Mo.App.1971)). "The degree of disability resulting from an injury and pre-existing conditions are questions of fact resolved by the Commission." *Carter,* 913 S.W.2d at 343 (citing *Johnson v. Terre Du Lac, Inc.,* 788 S.W.2d 782, 783 (Mo.App. E.D.1990)). The Commission may consider all the evidence, including the testimony of the employee, and draw all reasonable inferences in arriving at the percentage of disability. *Blair v. Associated Wholesale Grocers, Inc.,* 593 S.W.2d 650, 655 (Mo. App. S.D.1980) (citing *Fogelsong v. Banquet Foods Corp.,* 526 S.W.2d 886, 892 (Mo.App. W.D.1975)).

■ Appellate courts have affirmed disability ratings made by the Commission which exceeded the highest of the percentages expressed in medical opinions. *Blair,* 593 S.W.2d at 655. Additionally, the Commission has the power to disregard a joint stipulation of facts that was entered into by the parties. *See Bull v. Excel Corp.,* 985 S.W.2d 411, 415 (Mo.App. W.D.1999) (Commission not bound by stipulation entered into by the parties regarding length of employee's exposure to repetitive motion where stipulation worked manifest injustice upon employee).

> The Commission is not bound by the experts' exact percentages of disability and is free to find a disability rating higher or lower than that expressed in medical testimony. This is because a claimant's degree of disability is not solely a medical question. As such, the Commission was not required to accept the specific rating percentage assigned by [the testifying doctor], notwithstanding the uncontradicted nature of his testimony.
>
> *Tillotson v. St. Joseph Med. Ctr.,* 347 S.W.3d 511, 523–524 (Mo.App. W.D. 2011) (internal citations and quotation marks omitted).

## Conclusion

■ While the fact of an accident and its role in causing an injury may be deemed admitted under the regulation when an employer fails to timely answer, a disability determination alleged within the claim is not to be deemed admitted nor is the Commission bound by it. To do so would (1) go beyond the anticipated scope of the regulation in light of its use of a standardized Claim for Compensation form that does not include a disability percentage estimation, and (2) usurp and undermine the "special province of the

Commission" in determining disability percentages.

Because the Commission deemed admitted only the fact of the accident and its role in causing Taylor's eye injury, it did not exceed its authority and we find no error.

For the foregoing reasons, we affirm.

All concur.