

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

JASON L. COLLINS,      )
            )
   Appellant-Respondent, )
            )
            )
v.             )
            )
            ) **WD86101**
CENTURY READY MIX, INC.,  ) **(Consolidated with WD86102)**
            )
   Respondent-Appellant, ) **OPINION FILED:**
            ) **October 31, 2023**
and          )
            )
TREASURER OF THE STATE OF )
MISSOURI - CUSTODIAN OF THE )
SECOND INJURY FUND,   )
            )
       Respondent. )

## Appeal from the Labor and Industrial Relations Commission

**Before Division Two:**  Janet Sutton, Presiding Judge, and
Alok Ahuja and Mark D. Pfeiffer, Judges

Century Ready Mix, Inc. ("Employer") appeals from the Labor and Industrial

Relations Commission's ("Commission") final award ("Award"), affirming and adopting

the Administrative Law Judge's ("ALJ") award allowing compensation to Mr. Jason L. Collins ("Collins").  Collins cross-appeals.  We affirm the Commission's Award.

## Factual and Procedural Background[1]

Collins started working for Employer as a concrete truck driver in May 2005.  He worked full-time, regularly forty to sixty hours per week, between eight and fifteen hours per day.  Out of an eight-hour shift, he would spend seven to seven-and-a-half hours sitting in the concrete truck.  Out of a fifteen-hour shift, he would spend thirteen to fourteen hours sitting in the same truck.  The concrete truck would be running the entire time since power was required from the engine to run the hydraulic pumps, and the truck was required to move frequently on the job site.

The concrete truck Collins drove was five to ten years old.  The seats in the truck were made out of metal with a medium-size cushion; however, the cushion was worn out.  The vibration from the diesel engine was rough, unlike a regular car.  Collins could definitely feel the engine vibrating when sitting in the truck, and he also experienced jarring in his seat since he was on undeveloped roads most of the time.

Collins had back pain prior to April 2, 2018, but the pain would get better with rest.  However, on and after April 2, 2018, the pain never stopped.  The pain reached a

---

[1] "When reviewing the evidence on the record, we do not view the facts in the light most favorable to the award, nor do we make all reasonable inferences in favor of the award.  Rather, we view the facts neutrally." *Ritchie v. Silgan Containers Mfg. Corp.*, 625 S.W.3d 787, 791 n.2 (Mo. App. W.D. 2021) (internal quotation marks omitted). "However, credibility determinations made by the Commission are binding on this court." *Id.* (citing *Annayeva v. SAB of TSD of City of St. Louis*, 597 S.W.3d 196, 200 n.8 (Mo. banc 2020)).

constant level of a six on a pain scale of zero to ten. The pain would shoot down his right leg and would get worse than a level six throughout the day as he worked.

Collins's injury required three separate lumbar epidural steroid injections with fluoroscopy, and eventually back surgery, including a right L5 hemilaminotomy with lumbar discectomy at the L5-S1 spine level. The pain was better for a short time after the injections and surgery, but the pain returned at the same level or worse within a month or two after each procedure. Prior to his work injury of April 2, 2018, Collins was able to perform all his work duties; however, since his work injury of April 2, 2018:

- he cannot use his back like he did before the last work injury;

- he is limited to how long he can sit, stand, walk, and sleep;

- he cannot sit or stand for more than twenty minutes;

- he is limited to walking about fifty feet before he has to rest;

- he gets about three hours of sleep at night due to pain;

- he takes an average of three naps during the day, each lasting thirty minutes, due to the inability to get a full night of sleep and side effects from the Oxycodone that make him drowsy;

- he has chronic back pain, increased urinary frequency (where he has to go every hour), fecal incontinence (two to three times a week), sexual dysfunction, anxiety, and depression;

- he cannot perform his daily activities in the same time period as he could prior to April 2, 2018;

- he used to hunt, fish, and play darts prior to the April 2, 2018 injury; however, he is now unable to do any of those activities because he cannot walk, stand, or sit very long;

- he no longer mows his lawn, does not wash any dishes, does not clean his bathtub, does not garden, vacuum, mop, sweep, or cook;

- he can drive but only for twenty minutes before he has to stop and get out to stand and stretch.

Collins notified Employer late in August 2019, as soon as he learned that his injury could be the result of his occupation. However, Employer did not offer him any treatment. Instead, Employer terminated Collins in September 2019 because he was not able to perform his work duties.

Collins graduated from high school but had no vocational training, other than truck driving training, and was never in the military.

On September 9, 2019, Collins filed a Claim for Compensation with the Missouri Department of Labor and Industrial Relations, Division of Workers' Compensation ("Division"). Collins alleged that:

> On or about 4/02/18 in Lee's Summit, MO during the ordinary course and scope of his employment with Century Ready-Mix, Inc. and/or Century Concrete, Inc. as a truck driver/laborer, Jason Collins was exposed to occupational disease/cumulative trauma in a degree greater than or different from that which affects the public generally and some distinctive features of his job which was common to all jobs of that sort. As a direct, proximate, and prevailing factor of his occupational positioning and duties, he suffered back, right lower extremity, and body as a whole cumulative trauma or disease thereby directly causing permanent partial disability, temporary total disability, permanent total disability, past and future medical bills, and

whole cost of the proceedings including attorney fees pursuant to R.S.Mo. § 287.560.

He stated that his average weekly wage was "Maximum Rate/Wage." The Division sent its Notice of Claim Filing to Employer on September 16, 2019. Employer filed its Answer to Claim for Compensation forty-five days later on October 31, 2019.

The first time a diagnostician ("Diagnostic Doctor") made a causal connection between Collins's occupational disease (back and right lower leg injuries) and his work-related activity or exposure (several years of whole-body vibration and jarring) was on June 17, 2020. According to the Diagnostic Doctor, Collins's maximum medical improvement date was October 19, 2019. The Diagnostic Doctor placed severe restrictions on Collins's activities. Collins was very limited as to sitting, standing, and walking; could do no squatting, crawling, kneeling, or climbing; and had to avoid frequent or constant bending at the waist, pushing, pulling, twisting, or sustained or awkward postures of the low back. The Diagnostic Doctor opined that the injuries Collins suffered to his back and right leg due to the last accident alone was enough to render him permanently totally disabled.

A vocational expert ("Vocational Expert") opined that Collins had no transferrable job skills and was unable to compete in the open labor market, and that no employer in the ordinary course of business would reasonably be expected to employ Collins in his present physical condition. The Vocational Expert felt the disabilities Collins suffered from the last accident alone were enough to render him permanently totally disabled.

5

On September 29, 2021, the parties (Collins, in person and by counsel; Employer, by counsel; the Second Injury Fund, by counsel) appeared for a Final Hearing before an ALJ and presented their evidence. The ALJ issued Findings of Fact and Ruling of Law on December 23, 2021:

- finding that Collins sustained an occupational disease arising out of and in the course of his employment;

- entering an award of future medical treatment;

- finding Collins's, the Diagnostic Doctor's, and the Vocational Expert's testimony credible;

- finding Collins was permanently totally disabled;

- finding the Second Injury Fund was not liable to Collins, since the last injury in isolation resulted in his permanent total disability;

- ordering Employer to pay Collins the sum of $923.01 each week from the date the Diagnostic Doctor placed him on maximum medical improvement as long as Collins remained permanently totally disabled; and

- subjecting all compensation awarded to a twenty-five percent lien in favor of Collins's attorney for attorney's fees.

On January 4, 2022, Employer filed an Application for Review of the ALJ's December 23, 2021 award with the Commission. Collins requested that the Commission tax Employer with Collins's attorney's fees and costs for having to respond to a frivolous appeal. Employer objected to the motion and asked that it be dismissed. The

Commission entered its Award, affirming the award and decision of the ALJ with a supplemental opinion. The Commission agreed with the ALJ that Employer's answer to Collins's claim for compensation was untimely, but disagreed that the issue of whether Collins sustained an occupational disease through repetitive trauma arising out of and in the course and scope of employment injury, as well as the issue of causation itself, were admitted as a consequence. The Commission concluded that Employer's untimely answer did not preclude it from disputing the issue of whether Collins sustained a compensable occupational disease injury within the course and scope of his employment.

Based on Collins's testimony, deemed credible by the ALJ, and the Diagnostic Doctor's expert opinion, the Commission found that Collins sustained a compensable occupational disease as a result of his exposure to repetitive trauma within the course and scope of his employment. The Commission determined that the ALJ correctly ruled that the "Maximum Rate/Wage" listed on Collins's claim was a statement of fact deemed admitted by Employer's untimely answer. The Commission approved and affirmed the ALJ's allowance of attorney's fees. However, in light of the Commission's finding that Employer's untimely answer to Collins's claim did not preclude it from disputing the threshold issue of whether Collins sustained an occupational disease arising out of and in the course of his employment, the Commission found that Employer's defense was not without reasonable ground and, therefore, denied Collins's motion for costs and expenses.

Employer timely appealed, and Collins timely cross-appealed. This Court ordered the cases consolidated under case number WD86101. Collins filed a motion for damages

for frivolous appeal against Employer, which motion this Court ordered taken with the case.

## Standard of Review

Our review of the Award is governed by section 287.495.1,[2] which provides in pertinent part:

> The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

"We review the findings and award of the Commission rather than the ALJ, to the extent that [the Commission's ruling] departs from the ALJ's ruling." *Ritchie v. Silgan Containers Mfg. Corp.*, 625 S.W.3d 787, 793 (Mo. App. W.D. 2021) (internal quotation marks omitted) (alteration in original). "We review the ALJ's findings and conclusions to the extent that the Commission affirms and adopts the ALJ's findings and conclusions." *Id.* "While we defer to the Commission's factual findings, we review issues of law, including the Commission's interpretation and application of the law, *de novo*." *Id.* (internal quotation marks omitted).

---

[2] All statutory references are to the REVISED STATUTES OF MISSOURI 2000, as supplemented through the date of Collins's injury on April 2, 2018, unless otherwise indicated.

**Points Relied On**[3]

Collins asserts two issues on cross-appeal. First, he contends that the Commission erred in concluding that causation was a legal issue not admitted by a late answer. Second, he claims that the Commission erred in denying Collins's motion for costs because Employer's appeal was frivolous.

Employer raises three issues on appeal. First, Employer avers that the Commission erred in finding that Employer was deemed to admit all questions of fact in the claim for compensation under 8 CSR 50-2.010(8)(B) because that provision is unconstitutional in that it violates Employer's due process rights. Second, Employer contends that the Commission erred in finding that Collins suffered an occupational disease that arose out of and in the course and scope of employment because there was insufficient evidence to warrant that finding. Third, Employer contends that the Commission erred in finding that the notice of injury was proper under section 287.420 because there was insufficient evidence to warrant the Commission's finding that Collins's notice of injury was proper under section 287.420 because the Commission misinterpreted section 287.420.

Because Collins's and Employer's first points are related, we will address them together. All other points will be addressed separately.

---

[3] Pursuant to Rule 84.04(i), Collins was deemed the appellant for purposes of the rule and has filed the initial brief. Employer's initial brief, as respondent, responds to Collins's brief and also contains issues and arguments involved in its appeal.

9

## Analysis

### Untimely Answer to Claim for Compensation

Upon receipt of a Claim for Compensation, the Division has the responsibility of forwarding a copy of the claim to all interested parties. 8 CSR 50-2.010(8). Within thirty days from the date of the Division's acknowledgment of a claim, parties must file an Answer to Claim for Compensation. *Id.* "Unless the Answer to Claim for Compensation is filed within thirty (30) days from the date the division acknowledges receipt of the claim or any extension previously granted, the statements of fact in the Claim for Compensation shall be deemed admitted for any further proceedings." 8 CSR 50-2.010(8)(B); *see also Taylor v. Labor Pros L.L.C.*, 392 S.W.3d 39, 43 (Mo. App. W.D. 2013); *T.H. v. Sonic Drive In of High Ridge*, 388 S.W.3d 585, 593 (Mo. App. E.D. 2012); *Anderson v. Veracity Rsch. Co.*, 299 S.W.3d 720, 726, 728 (Mo. App. W.D. 2009).

Employer argues that 8 CSR 50-2.010(8)(B) is unconstitutional because it violates Employer's due process rights in that its service/notice provision is not reasonably calculated to provide notice to the employer/insurer nor allow it appropriate time to defend against the claim.[4]

---

[4] "Like local ordinances, administrative regulations enacted pursuant to an authorizing statute may have the force of law, but such regulations are not statutes. Here, no claim is made that the statutes authorizing the regulations are invalid. Because no claim involving the validity of a statute is involved, initial appellate jurisdiction lies with the court of appeals." *Adams Ford Belton, Inc. v. Mo. Motor Vehicle Comm'n*, 946 S.W.2d 199, 201 (Mo. banc 1997); *Caranchini v. Mo. Bd. of Law Exam'rs*, 447 S.W.3d 768, 773 n.9 (Mo. App. W.D. 2014).

Here, Employer's abbreviated constitutional challenge relies on the conclusory assertion that the procedure for notifying employers/insurers of workers' compensation claims should be commensurate with the procedure in Rule 54.13[5] governing service of process in civil actions within the state. Employer's argument is unavailing. "The Compensation Act itself is an exclusive and complete code and provides for its own procedure." *U.S. Dep't of Veterans Affs. v. Boresi*, 396 S.W.3d 356, 362 (Mo. banc 2013) (internal quotation marks omitted). "As a general proposition, the Missouri Rules of Civil Procedure . . . do not apply to workers' compensation actions, unless the statute implicates the application of a specific rule."[6] *Id.* (internal quotation marks omitted). Rule 8 CSR 50-2.010(8)(B)'s service/notice provision does not violate Employer's due process rights.

Furthermore, at the administrative hearing before the ALJ, the ALJ expressly noted that, "The Division sent its Notice of Claim Filing to the employer on

---

[5] All rule references are to I MISSOURI COURT RULES – STATE 2023.

[6] The Missouri Supreme Court has noted that:

> The law recognizes only rare exceptions to this rule. In the matter of depositions taken pursuant to section 287.560, [RSMo] 2000, this Court has held that the Supreme Court Rules apply. *State ex rel. McConaha v. Allen*, 979 S.W.2d 188, 189-90 (Mo. [banc] 1998). This holding was based upon an express provision of section 287.560, RSMo 2000, providing that litigants before the division are entitled to take depositions in the same manner as in civil proceedings. *Id.* at 188. In addition, the regulation promulgated to organize the procedures for workers' compensation hearings states that "[t]he rules of evidence for civil cases in the state of Missouri shall apply" to hearings before the division. 8 CSR 50-2.010.14.

*U.S. Dep't of Veterans Affs. v. Boresi*, 396 S.W.3d 356, 362 n.5 (Mo. banc 2013).

11

September 16, 2019." Then, after noting that Employer's Answer was due within thirty days of the Notice of Claim Filing, the ALJ detailed that Employer's answer was fifteen days late and that Employer's "late Answer is undisputed and uncontroverted."

Employer made no effort whatsoever to present any evidence that the Division's Notice of Claim Filing was never received by the department assigned to receive and document receipt of such notices on behalf of Employer. Instead, Employer simply denies it received the Notice of Claim Filing from the Division and rests upon its challenge to the regulatory notice provision being unconstitutional because it does not require the same notice and service provisions as the Civil Rules of Procedure. For reasons stated above, we reject Employer's argument on appeal and proceed with analysis of the effect of Employer's untimely answer to the Claim for Compensation.

"[A]n employer's untimely answer results in the admission of factual allegations in a claimant's claim for compensation." *T.H.*, 388 S.W.3d at 593. Courts have held that factual allegations in a Claim for Compensation include:

- how the injury occurred, *Anderson*, 299 S.W.3d at 727 (citing *Lumbard-Bock v. Winchell's Donut Shop*, 939 S.W.2d 456, 458 (Mo. App. W.D. 1996), *overruled in part on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 227 (Mo. banc 2003));

- causation, *Anderson*, 299 S.W.3d at 727 (citing *Lumbard-Bock*, 939 S.W.2d at 458); *Hubbert v. Boatmen's Bank*, 944 S.W.2d 302, 306 (Mo. App. W.D. 1997) ("[T]he existence of a causal relationship is a question of fact for the Commission to determine."), *overruled in part on other grounds by Hampton*, 121 S.W.3d at

226; *Henderson v. Chrysler Corp.*, 601 S.W.2d 645, 648-49 (Mo. App. E.D. 1980) ("The question of causal relationship was one of fact."), *overruled in part on other grounds by Hampton*, 121 S.W.3d at 231;

- wage rate, including the average weekly wage and the "max rate" as to the average weekly wage, *Taylor*, 392 S.W.3d at 44-45 (citing *Aldridge v. S. Mo. Gas Co.*, 131 S.W.3d 876 (Mo. App. S.D. 2004); *T.H.*, 388 S.W.3d at 594);

- the date of the accident, *Hendricks v. Motor Freight Corp.*, 570 S.W.2d 702, 707 (Mo. App. 1978).

"However, allegations in a claim for compensation which are legal conclusions are not deemed admitted by an employer's untimely answer." *T.H.*, 388 S.W.3d at 593 (citing *Anderson*, 299 S.W.3d at 728). "Whether an injury was in the course of employment . . . is a legal question not admitted by an untimely answer." *Anderson*, 299 S.W.3d at 728; *see also Taylor*, 392 S.W.3d at 43 (noting that the failure to timely answer "does not result in the admission of legal conclusions such as whether the injury arose out of or in the course of the employment"). A disability percentage determination alleged within a claim for compensation "is not to be deemed admitted nor is the Commission bound by it"; the determination of the degree of disability is within the "exclusive province of the Commission," regardless of stipulations by the parties or specific rating percentages assigned by a testifying doctor. *Taylor*, 392 S.W.3d at 45.

In Collins's Claim for Compensation, he alleged that:

On or about 4/02/18 in Lee's Summit, MO during the ordinary course and scope of his employment with Century Ready-Mix, Inc. and/or Century Concrete, Inc. as a truck driver/laborer, Jason Collins was exposed to

13

occupational disease/cumulative trauma in a degree greater than or different from that which affects the public generally and some distinctive features of his job which was common to all jobs of that sort. As a direct, proximate, and prevailing factor of his occupational positioning and duties, he suffered back, right lower extremity, and body as a whole cumulative trauma or disease thereby directly causing permanent partial disability, temporary total disability, permanent total disability, past and future medical bills, and whole cost of the proceedings including attorney fees pursuant to R.S.Mo. § 287.560.

The Commission is not bound to deem admitted *all* of the claimant's allegations when the employer fails to timely answer. *Taylor*, 392 S.W.3d at 44. Collins's allegations in the claim form—such as positing that Collins "was exposed to occupational disease/cumulative trauma in a degree greater than or different from that which affects the public generally and some distinctive features of his job which was common to all jobs of that sort" and that he suffered injury "[a]s a direct, proximate, and prevailing factor of his occupational positioning and duties"—are legal conclusions and not factual statements that (1) the injury occurred, and (2) it occurred at work. *See id.* The Commission did not err in concluding that Employer's untimely answer did not preclude it from disputing the issue of whether Collins sustained a compensable occupational disease injury within the course and scope of his employment.[7]

Collins's Point I and Employer's Point I are denied.

---

[7] We note that the Commission determined the issue in Collins's favor, concluding that, "[b]ased on the employee's testimony, deemed credible by the ALJ, and [the Diagnostic Doctor's] expert opinion, we find that the employee sustained a compensable occupational disease as a result of his exposure to repetitive trauma within the course and scope of his employment."

14

## Costs Under Section 287.560

In Collins's second point on appeal, he asserts that the Commission erred in denying his motion for costs pursuant to section 287.560 because Employer's appeal was frivolous.

"With regard to the Commission's decision relating to the assessment of costs against a party under Section 287.560, we review the Commission's action for an abuse of discretion." *Donnell v. State*, 667 S.W.3d 137, 142 (Mo. App. E.D. 2022). "An abuse of discretion generally means a decision so clearly against the logic of the circumstances, and so unreasonable and arbitrary, that it shocks one's sense of justice and indicates a lack of careful deliberate consideration." *Id.* (internal quotation marks omitted).

Collins reasons that the Commission should have assessed the costs of the proceedings against Employer because Employer had no legal defense to the appeal on the issues of wage rate, notice of injury, and causation due to its untimely answer.

"[T]he American Rule generally provides that parties pay their own attorneys' fees and related costs." *Id.* However, "if the division or the commission determines that any proceedings have been brought, prosecuted or defended without reasonable ground, it *may* assess the whole cost of the proceedings upon the party who so brought, prosecuted or defended them." § 287.560 (emphasis added.) "To that effect, '[a]n employer's defense is without reasonable ground where the employer offers absolutely no ground, reasonable or otherwise for refusing benefits clearly owed to a claimant because his injury was indisputably work-related.'" *Donnell*, 667 S.W.3d at 143 (alteration in original) (quoting *Clark v. Harts Auto Repair*, 274 S.W.3d 612, 618 (Mo. App. W.D.

15

2009)). While the Commission "may" assess such costs, "neither the statutory language nor case law compels such an award." *Id*.; *see also McAlister v. Strohmeyer*, 395 S.W.3d 546, 552 (Mo. App. W.D. 2013) (noting "[u]se of the word 'may' in a statute implies alternate possibilities and that the conferee of the power has discretion in the exercise of the power"). "Indeed, our appellate courts have cautioned the Commission to exercise this discretionary statutory power 'with great caution and only when the case for costs is clear and the offense egregious.'" *Donnell*, 667 S.W.3d at 143 (emphasis omitted) (quoting *Wilson v. C.C.S., Inc.*, 140 S.W.3d 115, 120 (Mo. App. W.D. 2004)).

In order to exercise its discretionary power to award costs, the Commission must first find that a party "brought, prosecuted or defended" the proceedings "without reasonable ground." § 287.560. "Whether an injury was in the course of employment . . . is a legal question not admitted by an untimely answer." *Anderson*, 299 S.W.3d at 728; *see also Taylor*, 392 S.W.3d at 43 (noting that the failure to timely answer "does not result in the admission of legal conclusions such as whether the injury arose out of or in the course of the employment"). The Commission denied Collins's motion for costs and expenses, concluding that,

> [i]n light of our finding that the employer/insurer's untimely answer to the employee's claim did not preclude it from disputing the threshold issue of whether the employee sustained an occupational disease arising out of and in the course of his employment, we find the employer/insurer's defense was not without reasonable ground.

The Commission did not abuse its discretion in declining to award Collins the costs of the proceedings against Employer.

Collins's Point II is denied.

16

**Sufficiency of the Evidence of Occupational Disease**

In Employer's second point, it asserts that there was insufficient evidence to warrant the Commission's finding that Collins suffered an occupational disease that arose out of and in the course and scope of employment.

An "occupational disease" is "an identifiable disease arising with or without human fault out of and in the course of the employment." § 287.067.1. "Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the diseases follow as an incident of an occupational disease as defined in this section." *Id.* "'To support a finding of occupational disease, an employee must provide substantial and competent evidence that they have contracted an occupationally induced disease rather than an ordinary disease of life.'" *Cheney v. City of Gladstone*, 576 S.W.3d 308, 315 (Mo. App. W.D. 2019) (quoting *Greenlee v. Dukes Plastering Serv.*, 75 S.W.3d 273, 277 (Mo. banc 2002)). "The relevant inquiry is '(1) whether there was an exposure to the disease which was greater than or different from that which affects the public generally, and (2) whether there was a recognizable link between the disease and some distinctive feature of the employee's job which is common to all jobs of that sort.'" *Id.* (quoting *Greenlee*, 75 S.W.3d at 277). "In order to show a recognizable link between the disease and the job, a claimant must produce evidence establishing a causal connection between the conditions of employment and the occupational disease." *Id.* (internal quotation marks omitted). "This evidence must be medical evidence and must establish a *probability* that working conditions caused the disease, although they need not be the sole cause." *Id.* (internal quotation marks

omitted). "An occupational disease exists when a peculiar risk or hazard is inherent in the work conditions and a disease follows as a natural result." *Id.* at 315-16 (internal quotation marks omitted).

Employer argues that the Commission's only finding on this issue was as follows:

The employee credibly described his fourteen-year exposure to continuous vibrations and jarring from seven to fourteen hours per day while sitting in a truck between five and ten years old with worn-out cushions. [The Diagnostic Doctor] opined that the employee's work activities as a concrete truck driver represented an exposure to risk that was unique to his employment when compared to his non-work-related daily activities; that the employee's exposure during more than full-time employment described over years represented a severe exposure to whole-body vibration and jarring; and that the employee's workplace exposure to risk with ongoing cumulative injury on each day worked up to the listed claim date of April 2, 2019, represented the direct, proximate and prevailing factor in the development of his disc herniation with marked stenosis, post-laminectomy syndrome, right lower extremity disabling symptoms and significant psychological disability.

While the Commission disagreed with the ALJ's conclusion that the issue of whether the employee sustained an occupational disease through repetitive trauma arising out of and in the course and scope of employment, as well as the issue of causation itself, were admitted as a consequence of the employer's untimely answer, the Commission found that Collins sustained a compensable occupational disease as a result of his exposure to repetitive trauma within the course and scope of his employment "based on [Collins's] testimony, deemed credible by the ALJ, and [the Diagnostic Doctor's] expert opinion."

Employer ignores that the Commission affirmed and adopted the ALJ's decision and award and incorporated it in the Commission's Award, as supplemented, to the extent it was not inconsistent. The ALJ made detailed findings of fact regarding the

18

nature and extent of Collins's disability, based on Collins's testimony, the medical

testimony of the Diagnostic Doctor, and the vocational testimony of the Vocational

Expert.[8]  The Commission's finding that Collins suffered an occupational disease that

arose out of and in the course and scope of his employment was supported by competent

and substantial evidence.

Employer's Point II is denied.

## Notice of Injury

In Employer's third point, it asserts that there was insufficient evidence to warrant

the Commission's finding that Collins's notice of injury was proper under section

287.420 because the Commission misinterpreted section 287.420.[9]

Section 287.420 provides in pertinent part that:

No proceedings for compensation for any occupational disease or repetitive
trauma under this chapter shall be maintained unless written notice of the

---

[8] In the argument section of Employer's brief under this point, Employer contends that the Commission erred in finding that Collins's job duties were the prevailing factor in causing his medical condition and resulting disability because that finding was against the weight of the evidence.  Because an against-the-weight-of-the-evidence challenge was not included in the point relied on, we will not address it.  "Claims of error raised in the argument portion of a brief that are not raised in a point relied on are not preserved for our review." *Terpstra v. State*, 565 S.W.3d 229, 241 n.8 (Mo. App. W.D. 2019).

[9] Employer's point relied on is multifarious in that it contains more than one basis for reversal, asserting that there was insufficient evidence to support the Commission's finding that Collins's notice of injury was proper under section 287.420 and that the Commission misinterpreted section 287.420.  *City of Aurora v. Spectra Commc'ns Grp., LLC*, 592 S.W.3d 764, 795 n.20 (Mo. banc 2019).  "Multifarious points preserve nothing for appellate review because they fail to comply with Rule 84.04(d)." *Id.*  "This Court, however, has discretion to review, *ex gratia*, multifarious points on the merits and elects to exercise that discretion in reviewing this point relied on." *Id.*  Because Employer's argument focuses on the Commission's misapplication of section 287.420, our *ex gratia* review will be limited to that one issue. *See Cedar Cnty. Comm'n v. Parson*, 661 S.W.3d 766, 772 (Mo. banc 2023).

time, place, and nature of the injury, and the name and address of the person injured, has been given to the employer no later than thirty days after the diagnosis of the condition unless the employee can prove the employer was not prejudiced by failure to receive the notice.

Employer contends that the Commission erred in relying exclusively on *Allcorn v. Tap Enterprises, Inc.*, 277 S.W.3d 823 (Mo. App. S.D. 2009), in finding that the notice requirement pursuant to section 287.420 was not triggered until the Diagnostic Doctor opined on June 17, 2020, that Collins's work duties caused his occupational disease. Employer disagrees with the *Allcorn* court's determination that it is not the diagnosis of a medical condition itself that triggers the notice requirement of section 287.420 but, rather, when "a diagnostician makes a causal connection between the underlying medical condition and some work-related activity or exposure." *Id*. at 829. Employer argues that this Court's focus should be on interpreting the word "condition" in the statute to mean "defective state of health" such that Collins's "condition" was the disc herniation at L5-S1 that was discovered by an MRI performed on April 11, 2018.

"'Looking to the plain, obvious, and natural import of the [statutory] language, it follows that a person cannot be diagnosed with an "occupational disease or repetitive trauma" until a diagnostician makes a causal connection between the underlying medical condition and some work-related activity or exposure.'" *Ritchie*, 625 S.W.3d at 796 (quoting *Allcorn*, 277 S.W.3d at 829). Here, the ALJ found that:

the first time that a diagnostician made a causal connection between the occupational disease (back and right lower leg injuries) and some work-related activity or exposure (several years of whole body vibration and jarring) was by [the Diagnostic Doctor] on June 17, 2020. No other diagnostician linked [Collins's] back and right lower extremity injuries to the continuous exposure of whole body vibration and jarring during his

20

duties with the employer as a truck driver. [The Diagnostic Doctor's] diagnosis, therefore, triggered the notice requirement of § 287.420, as outlined in *Allcorn*.

Similarly, in *Ritchie*, the Commission found, even though a doctor had treated Ritchie in 2014 for elbow pain that the doctor believed was exacerbated by her operation of a forklift, the doctor who diagnosed Ritchie with complex regional pain syndrome, lateral epicondylitis, and cubital tunnel syndrome in 2017 "was the only diagnostician to make a causal connection between the repetitive motion disease and some work-related activity or exposure." *Ritchie*, 625 S.W.3d at 792, 796. The Commission found that the 2017 diagnosis triggered Ritchie's duty to provide written notice under section 287.420. *Id*. at 796. Ritchie provided written notice to her employer of a work-related injury to her left arm on July 12, 2016, which preceded the 2017 diagnosis; therefore, the Commission determined that Ritchie's notice was timely. *Id*. On appeal, the employer and insurer argued that the Commission erred in reaching this finding because a doctor made a causal connection between Ritchie's work activity and her elbow pain in 2014. *Id*. We disagreed, noting that in 2014 the doctor never opined that Ritchie had sustained a work-related occupational disease or injury arising from the repeated use of her elbow; therefore, Ritchie's duty to provide written notice to employer was not triggered. *Id*. We determined that the Commission did not err in finding Ritchie's written notice on July 12, 2016, was timely.

The Commission did not misinterpret the law in concluding that the Diagnostic Doctor's June 17, 2020 diagnosis triggered the notice requirement of section 287.420.

Employer's Point III is denied.

21

**Motion for Damages for Frivolous Appeal**

In Collins's Point IV on cross-appeal, he requests that this Court award him attorney fees pursuant to Rule 84.19 for requiring him to respond to what he asserts is Employer's frivolous appeal.[10]

Rule 84.19 provides that "[i]f an appellate court shall determine that an appeal is frivolous it may award damages to the respondent as the court shall deem just and proper." "The authority to assess damages for a frivolous appeal rests within the sound discretion of this court." *Bugg v. Rutter*, 466 S.W.3d 596, 605 (Mo. App. W.D. 2015) (internal quotation marks omitted).

"The purpose of Rule 84.19 is to prevent congestion of appellate dockets with unmeritorious cases and to compensate respondents for the time and cost of responding to a futile appeal." *Hynes v. Mo. Dep't of Corr.*, 666 S.W.3d 244, 250 (Mo. App. W.D. 2023) (internal quotation marks omitted). "Whether an appeal is frivolous is considered on a case-by-case basis and the test generally used is whether the appeal presents any justiciable question and whether it is so readily recognizable as devoid of merit on the face of the record that there is little prospect of success." *Id.* (internal quotation marks omitted). Damages under Rule 84.19 are awarded "only with great caution lest we chill others from filing meritorious appeals." *Id*. (internal quotation marks omitted). Awarding such damages "is a drastic measure which the court reserves for those cases in

---

[10] On June 23, 2023, Collins filed a Rule 84.19 motion for damages for frivolous appeal. This Court ordered the motion taken with the case. This Court's Special Rule 29 does not apply to claims for damages under Rule 84.19.

which an appeal on its face is totally devoid of merit." *Id.* at 251 (internal quotation marks omitted).

We do not believe that Employer's appeal rises to the requisite level to justify an award of damages for a frivolous appeal. Therefore, we deny Collins's Rule 84.19 motion.

**Conclusion**

The Commission's Award is affirmed.

_____
Mark D. Pfeiffer, Judge

Janet Sutton, Presiding Judge, and Alok Ahuja, Judge, concur.