

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| JEREMY JARVIS, | ) | No. ED113075 |
| | ) | |
| Appellant, | ) | Appeal from Labor & Industrial |
| | ) | Relations Commission |
| v. | ) | Injury No. 15-098439 |
| | ) | |
| TREASURER OF THE STATE OF | ) | |
| MISSOURI – CUSTODIAN OF THE | ) | |
| SECOND INJURY FUND, | ) | |
| | ) | |
| Respondent. | ) | Filed: May 27, 2025 |

Jeremy Jarvis appeals the Labor and Industrial Relations Commission's decision denying his claim against the Treasurer of Missouri as Custodian of the Second Injury Fund ("the Fund"). The Commission determined that Jarvis failed to prove that each of his relevant preexisting disabilities met the fifty-week permanent partial disability threshold as required pursuant to § 287.220.3, RSMo Supp 2014.[1] Jarvis challenges the Commission's determination, arguing that all relevant preexisting disabilities were statutorily qualified disabilities and that the Commission's decision was not supported by substantial and competent evidence. Because the Commission did not err in its application of the law and its decision was supported by substantial and competent evidence, the Commission's decision is affirmed.

---

[1] All statutory references herein are to RSMo Supp. 2014.

**Background**

Jarvis worked as an iron worker and was injured multiple times during his employment. In 2001, Jarvis sustained injuries to his right ankle and both arms while working. Jarvis filed a workers' compensation claim against his employer and settled his claim for his right elbow for 57.75 weeks' disability, his left wrist for 43.75 weeks' disability, and his right leg for 46.5 weeks' disability. This award was subject to a 10 percent loading factor and 21 weeks of disfigurement.[2] In 2011, Jarvis settled another workers' compensation claim for a work-related injury for 20 percent of his right wrist. After all of these injuries, Jarvis continued working and participating in non-work activities, including martial arts, skateboarding, weightlifting, and playing in a softball league.

In 2015, Jarvis was working at a job-site when an iron beam hit him in the back of his legs. Jarvis filed a workers' compensation claim against his employer and entered into a compromise settlement. His employer paid him permanent partial disability benefits on both legs and a 10 percent multiplicity factor on all body parts. The compromise settlement left open the Fund's liability.

Dr. David Volarich performed an independent medical examination of Jarvis. In his report, Dr. Volarich provided permanent partial disability ratings for Jarvis' 2015 primary injury as well as permanent partial disability ratings for Jarvis' preexisting disabilities. Dr. Volarich imposed restrictions on Jarvis based on his disabilities. Dr. Volarich advised Jarvis to avoid stooping, squatting, crawling, kneeling, pivoting, climbing, and impact maneuvers. Dr. Volarich advised Jarvis to avoid navigating uneven terrain and to handle less than 20 pounds of weight.

---

[2] Jarvis does not argue that this loading factor should enhance any of his preexisting disabilities beyond the settlement value. As a result, the issues presented in *Eckardt v. Treasurer of Missouri*, No. SC 100784, 2025 WL 1239814 (Mo. banc Apr. 29, 2025), are not at issue here.

Further, Jarvis was instructed to limit prolonged weight bearing to 15-20 minutes, as he was able to tolerate. Dr. Volarich also directed Jarvis to engage in appropriate strengthening, stretching, and non-impact exercise. Dr. Volarich had no issue with Jarvis returning to work but recommended Jarvis undergo a vocational assessment to determine whether he was permanently and totally disabled. Dr. Volarich reiterated these opinions in his deposition. However, in an addendum to his independent medical examination report in April 2023, Dr. Volarich responded to additional questions wherein he clarified that Jarvis would only be permanently and totally disabled with the inclusion of his 2001 preexisting disabilities.

As recommended by Dr. Volarich, Jarvis met with Timothy Lalk, who performed a vocational assessment. Lalk testified that Jarvis stated he needed to elevate his leg for symptom relief. Lalk stated he would defer to a medical doctor whether Jarvis needed to elevate his leg as a result of his primary injury. Lalk agreed that, hypothetically, if the need to elevate his leg was a result of the 2015 injury alone, then Jarvis' 2015 injury alone is enough to render him unemployable.

After submission of the entire record, the Administrative Law Judge determined there were three potential qualifying preexisting disabilities from 2001: (1) the right elbow; (2) the right leg; and (3) the left wrist. The ALJ determined the right elbow was rated at 57.75 weeks' permanent partial disability, the right leg was rated at 54.25 weeks' permanent partial disability,[3]

---

[3] The Commission adopted the ALJ's increased right leg disability rating from the previously settled workers' compensation award. The decision justified this increased disability rating because Jarvis underwent additional medical treatment. There is some question as to whether the Commission is allowed to make its own determination of the percentage of a preexisting partial disability after an award has been made. Section 287.220.2 states "the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time the [primary] injury was sustained shall then be determined by that administrative law judge or by the commission …." Yet, our courts have held that the Commission lacks the statutory authority "to set aside the prior compromise settlement and award [] a higher percentage of permanent

and the left wrist was rated at 43.75 weeks' permanent partial disability. The ALJ concluded Jarvis was permanently and totally disabled following the 2015 primary injury. However, the ALJ found that Jarvis failed to demonstrate he was entitled to Fund benefits. The ALJ explained that Dr. Volarich relied on all three of Jarvis' preexisting 2001 disabilities to reach his conclusion that Jarvis was permanently and totally disabled. Because one of those three preexisting disabilities was not a statutorily qualified disability, the ALJ determined there was no Fund liability.

Jarvis sought review of the ALJ's decision from the Commission. A majority of the Commission affirmed and incorporated the ALJ's decision denying Fund benefits, but the Commission issued a supplemental decision rejecting some of the ALJ's findings. Jarvis appeals.

**Analysis**

*Standard of Review*

"Workers' compensation law is entirely a creature of statute" and must be strictly construed. *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 381 (Mo. banc 2014); section 287.800.1. This Court reviews Commission decisions to ensure they are "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, sec. 18. A decision and award may be modified, reversed, remanded for rehearing, or set aside upon finding that: (1) "the [C]ommission acted without or in excess of its powers;" (2) "the award was procured by fraud;" (3) the Commission's factual findings "do not support the award;" or (4)

---

partial disability based upon [an] asserted worsening condition." *Ritch v. Pro. Transp., Inc.*, 599 S.W.3d 492, 495 (Mo. App. 2020). Because competent and substantial evidence supports the Commission's determination that Jarvis failed to prove that all of his preexisting disabilities met the minimum threshold required for Fund benefits, this Court need not resolve this inconsistency at this time.

4

"there was not sufficient competent evidence in the record to warrant the making of the award." Section 287.495.1.

The Commission's factual findings are conclusive and binding in the absence of fraud. *Id*. Additionally, this Court defers to the Commission's credibility determinations "and the weight given to conflicting evidence." *Weibrecht v. Treasurer of Mo.*, 659 S.W.3d 588, 592 (Mo. banc 2023). "Importantly, if the evidence allows for two contrary findings, [this Court is] bound by the finding reached by the Commission." *Kent v. NHC Healthcare*, 621 S.W.3d 596, 608 (Mo. App. 2021).

*The Fund's Liability*

Jarvis claims the Commission erred in denying him Fund benefits because he met the § 287.220.3(2) requirements. Determining whether a claimant is permanently and totally disabled and whether a claimant is entitled to Fund benefits are separate inquiries. *Harper v. Springfield Rehab & Health Care Ctr./NHC Health*, 687 S.W.3d 613, 619 (Mo. banc 2023). Section 287.220 was amended in 2013 to limit the number of workers eligible for Fund benefits. *Weibrecht*, 659 S.W.3d at 590. Because Jarvis made his claim after the amendment, he must demonstrate two conditions pursuant to section 287.220.3 to obtain Fund benefits.

First, Jarvis "must have at least one qualifying preexisting disability." *Treasurer of Mo. v. Parker*, 622 S.W.3d 178, 181 (Mo. banc 2021). To be considered a qualified preexisting disability, it must be "medically documented," equal "a minimum of fifty weeks of permanent partial disability compensation," and meet one of the four additional statutorily mandated criteria. Section 287.220.3(2)(a)a. Second, Jarvis must demonstrate he "thereafter sustain[ed] a subsequent compensable work-related injury that, when combined with the preexisting

disability[4] ... results in a permanent total disability ...." Section 287.220.3(2)(a)b. Jarvis can satisfy the second condition by proving that his primary injury "when combined with all preexisting disabilities that qualify under one of the four eligibility criteria listed in the first condition" results in him being permanently totally disabled. *Parker*, 622 S.W.3d at 182. Jarvis may not rely on a non-qualifying preexisting disability to prove he is permanently and totally disabled. *Klecka v. Treasurer of Mo.*, 644 S.W.3d 562, 567 (Mo. banc 2022).

The Commission's decision relied upon Dr. Volarich's opinion that if a vocational expert could not identify a job for Jarvis based on *all* three of his preexisting disabilities, then Jarvis would be permanently totally disabled as a direct result from his primary injury. However, only two of Jarvis' three preexisting disabilities were qualified disabilities under § 287.220.3(2)(a)a. The injury to Jarvis' left wrist was only rated at 43.75 weeks, which fails to meet the statutorily defined minimum to be considered a qualifying preexisting disability.

Our Supreme Court has reiterated that a claimant may not rely on a non-qualifying preexisting disability to prove he or she is permanently and totally disabled. *Safford v. Treasurer*, 659 S.W.3d 580, 584 (Mo. banc 2023); *Klecka*, 644 S.W.3d at 567; *Parker*, 622 S.W.3d at 182. Dr. Volarich's permanent and total disability determination was based on Jarvis' primary injury combining with all three of his preexisting disabilities. Accordingly, because one of those preexisting disabilities was not a statutorily qualified injury, Jarvis was not eligible for Fund benefits. The Commission did not err in its application of the law.

---

[4] "Although section 287.220.3(2)(b) refers to the preexisting disability in the singular form – 'when combined with the preexisting disability' – section 1.030 instructs that the singular form should be interpreted to include the plural form." *Parker*, 622 S.W.3d at 182 (emphasis in original).

*Substantial and Competent Evidence*

Jarvis raises two claims that the Commission's decision is not supported by competent and substantial evidence. When challenging the competent and substantial evidence of the Commission's decision, this Court examines "the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). Jarvis must follow a mandatory analytical formula for a successful challenge. *Schlereth v. Aramark Unif. Servs., Inc.*, 589 S.W.3d 645, 652 (Mo. App. 2019). Jarvis must:

1. Identify a factual proposition necessary to sustain the Commission's result;

2. Marshal all evidence in the record supporting that factual proposition, subject to the Commission's authorized factual and credibility determinations, explicit or implicit, and viewing the record objectively where there were no explicit or implicit findings;

3. Demonstrate why the evidence from the second step lacks sufficient probative force on the issues, such that the Commission could not have reasonably believed the factual proposition set forth in step one.

*Robinson v. Loxcreen Co., Inc.*, 571 S.W.3d 247, 250-51 (Mo. App. 2019) (quoting *Nichols v. Belleview R-III Sch. Dist.*, 528 S.W.3d 918, 927-28 (Mo. App. 2017)). "Reversal on the basis that the Commission's award is unsupported by sufficient competent evidence or the evidence weighs overwhelmingly against the Commission's award 'is warranted only in rare cases.'" *Schlereth*, 589 S.W.3d at 651 (quoting *Brune v. Johnson Controls*, 457 S.W.3d 372, 376 (Mo. App. 2015)).

First, Jarvis claims the Commission erred in denying him Fund benefits because its finding that his preexisting disability to his left wrist was not a qualified injury was not supported by competent and substantial evidence. Jarvis states he testified to increased use of his left wrist to compensate for his other disabilities and its subsequent deterioration, and Dr. Volarich stated it was a qualified injury. Jarvis argues that because his testimony and Dr. Volarich's report were

undisputed, the Commission was required to find it was a qualified injury, allowing him to receive Fund benefits.

Jarvis generally adhered to the mandatory analytical framework for this challenge. He identifies the prior settlement as evidence favorable to the Commission's decision. Then Jarvis identifies Dr. Volarich's medical examination report that rates Jarvis' preexisting disability to his left wrist at over fifty weeks of permanent partial disability compensation due to additional medical treatment. Jarvis also argues his testimony that he has increased arthritis as a result of the preexisting disability is evidence that the Commission should have increased the disability rating and number of weeks for his left wrist. Jarvis then argues that in the context of the whole record, Dr. Volarich's testimony and Jarvis' non-medical statements so overwhelm the evidence supporting the Commission's decision that its decision should be reversed.

However, Jarvis notably fails to take into consideration that the Commission made an explicit credibility determination rejecting Dr. Volarich's opinion of Jarvis' left wrist.[5] Additionally, the testimony Jarvis cites to support an increased rating refers generally to the fact that he has "arthritis everywhere." Jarvis did not testify specifically about arthritis in his left wrist nor does he identify that this arthritis was medically documented.

"[T]he determination of the degree of disability is within the 'exclusive province of the Commission,' regardless of stipulations by the parties or specific rating percentages assigned by a testifying doctor." *Collins v. Century Ready Mix, Inc.*, 678 S.W.3d 178, 188 (Mo. App. 2023) (quoting *Taylor v. Lab. Pros L.L.C.*, 392 S.W.3d 39, 45 (Mo. App. 2013)). There were factual determinations on the record supporting the Commission's decision. Jarvis does not claim those

_____

[5] The Commission found that Dr. Volarich's opinion was "biased by time and self-serving." Although the Commission rejected a portion of the ALJ's findings regarding Dr. Volarich's addendum, it did not reject the ALJ's credibility findings.

8

factual determinations were made fraudulently. *See* section 287.495.1. "This Court 'may not substitute its judgment on the evidence,' and when the 'evidence before an administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding.'" *Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 665 (Mo. banc 2015) (quoting *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012)). The Commission did not err in failing to find an increased percentage of disability of Jarvis' left wrist.

Second, Jarvis claims the Commission erred in denying him benefits because its conclusion that his left wrist injury is essential for Fund liability is not supported by sufficient competent evidence. Jarvis argues Lalk did not rely on his preexisting left wrist disability in his ultimate determination of permanent and total disability.

Jarvis identifies that the Commission's decision made specific findings regarding Dr. Volarich's conclusions that he would not be permanently and totally disabled without including the preexisting left wrist injury. However, Jarvis points to Lalk's testimony hypothesizing that if a medical doctor required Jarvis to elevate his leg multiple times a day, he could be permanently and totally disabled based on that injury alone.[6] Jarvis argues that Lalk's conclusion overwhelmed that of Dr. Volarich's such that the Commission could not have reasonably believed Dr. Volarich.

---

[6] Lalk was asked specifically "if the need to elevate his leg comes from his 2016 injury alone, then his 2015 work injury alone is enough …." The primary injury in this case occurred in 2015; there was no 2016 injury before the Commission. Further, to establish Fund liability there must be a preexisting disability that combines with the primary injury to render a claimant permanently and totally disabled. *Parker*, 622 S.W.3d at 181. Lalk's testimony that Jarvis' primary injury alone rendered him permanently and totally disabled does not trigger the Fund's liability.

9

"A reviewing court considers whether the Commission could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it." *Hornbeck*, 370 S.W.3d at 629 (internal quotation omitted). "Furthermore, where the right to compensation depends on which of two medical theories should be accepted, the issue is peculiarly for the Commission's determination." *Steinbach v. Maxion Wheels, Sedalia, LLC*, 667 S.W.3d 188, 197 (Mo. App. 2023) (quoting *Mirfasihi v. Honeywell Fed. Mfg. & Techs., LLC*, 620 S.W.3d 658, 666 (Mo. App. 2021)).

The Commission was presented with two competing experts, who both had different opinions on what preexisting disabilities combined with the primary injury to render Jarvis permanently and totally disabled. Jarvis had not only the burden of production but also the burden of persuading the Commission to view the facts in his favor. *March v. Treasurer of State*, 649 S.W.3d 293, 299 (Mo. banc 2022). Jarvis met his burden of production by producing evidence to support his theory. However, he failed to meet the burden of persuasion because he did not "convince the fact-finder to view the facts in a way that favors" him. *Id.* (quoting *Krispy Kreme Doughnut Corp. v. Dir. of Revenue*, 488 S.W.3d 62, 67 (Mo. banc 2016)). The decision regarding which opinion to accept was a matter for the Commission; this Court may not substitute its judgment of the evidence merely because the record could support different findings. *See Huffman v. Treasurer of State*, 689 S.W.3d 744, 759 (Mo. App. 2024). The Commission did not err in failing to accept Lalk's opinion of Jarvis' disability.

**Conclusion**

The Commission's decision is affirmed.

_____

John P. Torbitzky, Presiding Judge

Robert M. Clayton III, J., and
Michael S. Wright, J., concur.

11